2005-NMCA-042

110 P.3d 531

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Hector Nicholas GARCIA,
Defendant–Appellant.**

**State of New Mexico, Plaintiff–Appellee,**

v.

**Juan Carlos Munoz, Defendant–
Appellant.**

Nos. 24,072, 24,065.

Court of Appeals of New Mexico.

Feb. 28, 2005.

Certiorari Denied, No. 29,130,
April 12, 2005.

Certiorari Granted, No. 29,135,
April 15, 2005.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Max Shepherd, Assistant Attorney General, Albuquerque, NM, for Appellee.

Liane E. Kerr, Albuquerque, NM, for Appellant Hector Nicholas Garcia.

John Bigelow, Chief Public Defender, Sheila Lewis, Assistant Appellate Defender, Santa Fe, NM, for Appellant Juan Carlos Munoz.

## OPINION

SUTIN, Judge.

{1} These cases arose out of a melee at an apartment complex in Las Cruces, New Mexico, consisting of serious altercations between two groups of young men. One group consisted of Alex Medina (Victim) and his friends, and the other consisted of Defendant Juan Carlos Munoz, Defendant Hector Nicholas Garcia, and their friends. Munoz and

Garcia fired shots from Munoz's apartment at Victim's vehicle as the vehicle was either leaving the area, or had left and was coming back to the apartment complex. A bullet hit and killed Victim. We affirm Defendants' convictions.

## PROCEDURAL BACKGROUND

{2} Based on uncertainty as to who fired the fatal bullet, Defendants were charged: in Count 1 of their indictments with felony murder or, alternatively, depraved mind murder, each a first degree murder charge, *see* NMSA 1978, § 30–2–1(A)(2), (3) (1994); in Count 2 with shooting at or from a motor vehicle resulting in great bodily harm, *see* NMSA 1978, § 30–3–8(B) (1993); in Count 3 with aggravated battery (deadly weapon), *see* NMSA 1978, § 30–3–5(A), (C) (1969); and in Counts 4 and 5 with aggravated assault (deadly weapon), *see* NMSA 1978, § 30–3–2(A) (1963). The jury was instructed on second degree murder and voluntary manslaughter as lesser offenses of Count 1.

{3} The jury found Defendants guilty of the crimes charged in Counts 2 through 5. The jury informed the court that it could not reach a verdict on the charge in Count 1 as to each Defendant. Based on the jury's inability to reach a verdict on the first degree murder charges in Count 1, the court declared a mistrial as to each Defendant.

{4} As the State was preparing for a second trial on the first degree murder charges, Defendants entered no contest pleas to second degree murder. Defendants reserved their right to appeal. The district court entered judgments showing Defendants convicted of, and sentencing Defendants on, Count 1, second degree murder; Count 2, shooting at or from a motor vehicle (great bodily harm); Count 3, aggravated battery (deadly weapon); and Counts 4 and 5, aggravated assault (deadly weapon).

{5} On appeal, Munoz asks this Court to determine that his plea was not knowing, intelligent, and voluntary because he was not advised that the most serious charge he faced at retrial was voluntary manslaughter, not second degree murder. He claims that he should have been advised of this because the district court failed to properly poll the jury, resulting in an implied acquittal on the second degree murder charge. He asserts he should therefore be permitted to withdraw his plea to second degree murder. He claims ineffective assistance of counsel as the basis for this relief.

{6} In addition, Munoz appeals on the further grounds that: on double jeopardy grounds, his conviction of shooting at a motor vehicle resulting in death barred retrial on the murder charge; the court erred in excluding Victim's blood alcohol content; and the court erred in admitting evidence of weapons that were not used in the commission of any crime.

{7} Garcia raises six issues on appeal, three of which are ones Munoz has also raised, namely: his convictions for shooting at a motor vehicle resulting in death and second degree murder violate double jeopardy; the court erred in excluding Victim's blood alcohol content; and the court erred in admitting evidence of weapons that were not used in the commission of any crime. Garcia's other appellate issues are that the district court: erred in excluding evidence of a prior altercation involving Victim; erred in excluding evidence of a witness's prior convictions; and erred by improperly admitting certain photos of Victim.

## DISCUSSION

{8} We have consolidated these two appeals, *State v. Garcia*, Docket No. 24,072, and *State v. Munoz*, Docket No. 24,065, for purposes of disposition of these cases on appeal. We discuss the facts material to Defendants' appellate points under our separate discussions of the points.

### Ineffective Assistance of Counsel—Munoz Only

{9} Garcia did not raise ineffective assistance of counsel on appeal. Munoz contends he did not receive effective assistance of counsel, because his counsel failed to advise him at the time of his plea to second degree murder that the highest degree of crime on which he could be retried was voluntary manslaughter. Underlying this contention is Munoz's further assertion that, based on the district court's failure in the first trial to poll the jury as to its deliberations on the second

degree murder charge, there was an implied acquittal as to second degree murder and the State was legally precluded from retrying Munoz on the first degree murder charge under principles of double jeopardy.

{10} Munoz's point on appeal requires us to determine whether the district court was required to poll the jury in regard to its deliberations on second degree murder. We view this issue as dispositive on Munoz's claim of ineffective assistance of counsel. The issue is one of law; we review issues of law de novo. *See State v. Moore*, 2004–NMCA–035, ¶ 12, 135 N.M. 210, 86 P.3d 635; *State v. Galaz*, 2003–NMCA–076, ¶ 4, 133 N.M. 794, 70 P.3d 784.

■ {11} For his implied acquittal and double jeopardy arguments, Munoz relies on *State v. Castrillo*, 90 N.M. 608, 566 P.2d 1146 (1977), *State v. Wardlow*, 95 N.M. 585, 624 P.2d 527 (1981), and Rule 5–611(D) NMRA. We discuss *Castrillo* and *Wardlow* at the outset. We then recite in more detail what occurred at trial. Following that, we discuss the legal effect of what occurred in court.

{12} In *Castrillo*, charges of first and second degree murder and voluntary manslaughter were, as in the present case, submitted to the jury. *Id.* at 610, 566 P.2d at 1148. The jury stated it was unable to reach a verdict, and the court declared a mistrial without inquiring into the jury's deliberations. *Id.* at 610, 613, 566 P.2d at 1148, 1151. The defendant was retried and found guilty of second degree murder. *Id.* at 610, 566 P.2d at 1148. The defendant appealed on double jeopardy grounds. *Id.* The *Castrillo* Court noted that "[a] manifest necessity for the declaration of a mistrial is shown since the jury could not agree to at least one of the included offenses within the murder charge." *Id.* at 613, 566 P.2d at 1151. However, the Court also noted that the record was "silent upon which, if any, of the specific included offenses the jury had agreed and upon which the jury had reached an impasse." *Id.* The Court further noted that "[t]he record is clear ... that the jury did not acquit the defendant on all offenses." *Id.* The Court stated that its holding in *State v. Spillmon*, 89 N.M. 406, 553 P.2d 686 (1976), "dictates a dismissal upon double jeopardy grounds as to

such offenses on which the record is unclear." *Castrillo*, 90 N.M. at 613, 566 P.2d at 1151. The Supreme Court further stated:

[T]he record is not clear as to which of the included offenses the jury was considering at the time of its discharge. Without inquiry by the trial court into the jury's deliberations on the greater, included offenses, no necessity is manifest to declare a mistrial as to those offenses and thus jeopardy has attached. Jeopardy did not attach to the offense of voluntary manslaughter which was the least of the included offenses. Had the jury reached a unanimous decision on that offense it could not have been in the posture it announced to the court.

*Id.* at 613–14, 566 P.2d at 1151–52.

{13} In *Spillmon*, the jury deadlocked on first and second degree murder, and found the defendant guilty of attempted robbery and not guilty of burglary. 89 N.M. at 407, 553 P.2d at 687. No mistrial was declared. *Id.* The district court set the case for retrial on the murder charge and the defendants moved to dismiss on double jeopardy grounds. *Id.* Our Supreme Court held that: "to try these defendants again on the murder charge would constitute double jeopardy because the trial court concluded the proceedings without declaring a mistrial and without reserving the power to retry those issues upon which the jury could not agree. If a mistrial had been properly declared, ... the State would be free to assert its claims before another jury." *Id.* According to the Court, when the district court finds "there is a reasonable probability that the jury could not agree," a manifest necessity exists to discharge the jury. *Id.* (internal quotation marks and citation omitted). In *Spillmon*, apparently because the district court failed to make such a finding and declare a mistrial, "the record [did] not disclose a 'manifest necessity' for the discharge of the jury and a final termination of the trial," requiring our Supreme Court to hold that further proceedings were barred because the defendants had already been placed in "jeopardy." *Id.* at 408, 553 P.2d at 688.

{14} The Court in *Castrillo* seems to have equated the district court's failure in *Castril-*

*lo* to inquire of the jury as to its deliberations with the court's failure in *Spillmon* to make a finding that there was a reasonable probability that the jury could not agree, thus, in effect, reading *Spillmon* to require more of the court than mere acknowledgment of the jury's announcement of deadlock. No inquiry having been made "into the jury's deliberations on the greater, included offenses," the Supreme Court in *Castrillo* determined that "no necessity is manifest to declare a mistrial as to those offenses and thus jeopardy has attached." *Id.* at 613–14, 566 P.2d at 1151–52. The *Castrillo* Court held that jeopardy did not attach to the offense of voluntary manslaughter, which was the least included offense, and the Court remanded for retrial on voluntary manslaughter. *Id.* at 614, 566 P.2d at 1152. As in *Spillmon*, the Court in *Castrillo* "resolve[d] any doubt in favor of the liberty of the citizen." 90 N.M. at 613, 566 P.2d at 1151 (internal quotation marks and citation omitted).

{15} After *Castrillo*, the Supreme Court decided *Wardlow*, 95 N.M. 585, 624 P.2d 527, a 1981 case in which a charge of battery on a peace officer and the sole lesser included offense of simple battery were at issue. Our Supreme Court read *Castrillo* to "require[ ] that where a jury is deadlocked on a charge involving included offenses, the trial court must determine whether the jury has voted to acquit or convict the defendant on any of the lesser-included offenses." *Wardlow*, 95 N.M. at 587, 624 P.2d at 529. In *Wardlow*, after being informed by the jury that it was deadlocked on the charge of battery on a peace officer, the court questioned the jury further. *Id.* at 586, 624 P.2d at 528. The foreman indicated "that there was a unanimous vote that there was no simple battery." *Id.* The court sought clarification, and the foreman replied that "[t]he vote is not unanimous for battery upon a peace officer." *Id.* (internal quotation marks omitted). Thus, upon questioning the jury as to the lesser included charge of simple battery, the district court understood the jury to have "voted neither to acquit nor convict the defendant ... but [to have] considered the charge inappropriate." *Id.* at 587, 624 P.2d at 529. It was clear, however, that the jury deadlocked on the greater charge of battery on a

peace officer. *Id.* On appeal, the Supreme Court read the circumstances to be that the jury considered the simple battery charge first, afterwards moving to the greater charge and indicating that "the true deadlock was between the option of finding Wardlow guilty on the greater offense or acquitting him, and that the jury did not have the intent to acquit Wardlow on the lesser offense." *Id.* Thus, the Court held that manifest necessity for a mistrial was supplied through the jury's inability to agree on a verdict and jeopardy did not attach. *Id.* at 587–88, 624 P.2d at 529–30.

{16} We realize that one might read *Castrillo* to require district courts to follow certain rules when a first degree murder charge and the lesser included charge of second degree murder are submitted to a jury and the jury indicates it is unable to reach a verdict on the greater charge. *Castrillo* states that "when a jury announces its inability to reach a verdict ..., the trial court [is] required to submit verdict forms to the jury to determine if it has unanimously voted for acquittal on any of the included offenses." 90 N.M. at 611, 566 P.2d at 1149. *Castrillo* also states that "[a] trial court should not accept an announcement as to the jury vote on any included offense until the jury has carried its deliberations as far as possible." *Id.* *Castrillo* further states that the district court must inquire into the jury's deliberations on the greater, included offenses, for, without such inquiry, "no necessity is manifest to declare a mistrial as to those offenses and thus jeopardy has attached." *Id.* at 613–14, 566 P.2d at 1151–52. Moreover, one might also understand the Supreme Court to have intended the words, "any of the included offenses," "any included offense," and "greater, included offense," to have meant and included the first degree murder charge and the lesser included second degree murder charge.

{17} Nevertheless, we think it important to note that nothing in *Spillmon* indicates, and nowhere in *Castrillo* is it expressly stated, that the district court in either case was required to make its finding regarding deadlock beyond the first degree murder charges, if indeed the jury was deadlocked at that

level. Further, nothing in the analyses in *Spillmon, Castrillo,* or *Wardlow* explains why a district court must inquire beyond the jury's deliberations on first degree murder, assuming a deadlock at that level. In addition, in *Spillmon* and *Castrillo* the lower courts did not even inquire as to the jury's first degree murder deliberations. Thus, based on the circumstances we discuss later in this opinion, and for the reasons that follow, we conclude that the district court in the present case was not required to inquire beyond the jury's first degree murder deliberations.

{18} The district court submitted to the jury an instruction conforming to UJI 14–250 NMRA. The instruction, commonly referred to as a "step-down" instruction, required the jury first to address first degree murder, and decide whether Munoz was guilty; if unable to decide Munoz was guilty of that charge, the jury was required to address second degree murder; if unable to decide Munoz was guilty of that charge, the jury was required to address voluntary manslaughter and decide whether Munoz was guilty of that charge. The jury was also instructed that if it had reasonable doubt as to whether Munoz committed any of the crimes, the jury was to determine that Munoz was not guilty of that crime, and if the jury found him not guilty of all of the crimes, it must return a verdict of not guilty.

{19} After submission of the jury instructions in the present case, the jury sent a note to the court stating, "We have deliberated and discussed our differences as to the charges in count one and [cannot] come to an agreement. We have come to an agreement on the [sic] counts two, three[,] four and five. How should we proceed?" The court sought input from counsel and then stated to counsel that it planned pursuant to Rule 5–611(D) to:

call the jury in and have them affirm that they've arrived at a verdict as to Counts 2, 3, 4 and 5 as to each defendant, and they are hung as to Count 1.

. . . [W]e'll inquire where the jury stands with respect to each of the two forms of first-degree murder. If they've reached a unanimous agreement as to those, and they are not guilty, then the Court will inquire as to the status on second degree. If they unanimously agree not guilty as to that one, then the Court will inquire as to voluntary manslaughter. If they have not agreed as to either form of first-degree murder, that will end the inquiry, and the Court will declare a mistrial as to Count 1 entirely.

No party objected to this plan.

{20} The court called the jury in and confirmed that the jury had reached verdicts on Counts 2 through 5. The court ascertained that the jury was unable to reach a decision as to Count 1. The court then read the verdicts on Counts 2 through 5. The parties waived the polling of the jury on Counts 2 through 5. The court then announced it was going to declare a mistrial as to Count 1. The following then occurred:

[DEFENSE]: Did you inquire as to whether they had reached a unanimous—

THE COURT: I'm going to.

[DEFENSE]: Don't we have to do that before you declare a mistrial?

THE COURT: I think, before we find out where they are on any given count, I have to declare the mistrial first.

[DEFENSE]: Okay. I'm sorry, Your Honor. (NOTE: Bench Conference concluded.)

THE COURT: Ladies and gentlemen, the Court has declared a mistrial as to Count 1.

I want to ask a few questions of you, . . ., as the foreperson.

As to Hector Nic[h]olas Garcia, was the jury able to reach a unanimous agreement as to first-degree murder, which is killing by an act greatly dangerous to others?

JUROR: No, sir.

THE COURT: Was the jury able to reach a unanimous agreement as to Hector Garcia as to felony murder, which is first-degree murder?

JUROR: No, sir.

THE COURT: As to the defendant Juan Carlos Munoz, was the jury able to reach a unanimous agreement as to first-degree murder, killing by an act greatly dangerous to others?

JUROR: No, sir.

THE COURT: As to Juan Carlos Munoz, was the jury able to reach a unanimous agreement as to felony murder, which is murder in the first degree?

JUROR: No, sir.

THE COURT: Counsel, is there any further inquiry?

[PROSECUTOR]: Not from the State, Your Honor.

[DEFENSE]: No, Your Honor.

At the conclusion, the State reserved the right to retry Defendants on Count 1, the felony murder and the depraved mind murder charges. The court permitted retrial in its order declaring a mistrial. The record does not reflect any objection by Munoz to the reservation of the right to retry him on Count 1 or to the court's decision to permit retrial.

{21} We do not think that *Castrillo* or *Wardlow* requires the conclusion that the district court in the present case failed to properly poll the jury by failing to specifically inquire into the jury's deliberations on the second degree murder charge. Nor do we think that these cases require a determination of acquittal on the second degree murder charge for failure to conduct such inquiry. The district court in *Castrillo* did not conduct inquiry into deliberations on any charge; therefore, there was no need for the court to analyze, and we do not believe it in that case analyzed whether, if it had inquired and determined a deadlock as to first degree murder, the court was required to continue its inquiry in regard to the jury's deliberations on second degree murder. *See Padilla v. State Farm Mut. Auto. Ins. Co.*, 2003–NMSC–011, ¶ 6, 133 N.M. 661, 68 P.3d 901 (indicating propriety of Court of Appeals distinguishing prior Supreme Court case when present case under consideration involves a different issue than the prior case or facts that distinguish the present case from the analysis in the prior case); *Fernandez v.*

*Farmers Ins. Co. of Ariz.*, 115 N.M. 622, 627, 857 P.2d 22, 27 (1993) (holding cases are not authority for propositions not considered); *State v. Wenger*, 1999–NMCA–092, ¶ 10, 127 N.M. 625, 985 P.2d 1205 (same), *rev'd on other grounds sub nom. State v. Johnson*, 2001–NMSC–001, 130 N.M. 6, 15 P.3d 1233. We do not, therefore, read *Wardlow* as locking in a rule that a failure to inquire as to second degree murder deliberations requires an acquittal on that charge. These cases did not, in our opinion, intend to require inquiry into the jury's second degree murder deliberations under the circumstances here. *See State v. Baca*, 115 N.M. 536, 540, 854 P.2d 363, 367 (Ct.App.1993) (stating that "[w]hile we are conscious of the controlling nature of Supreme Court precedent, *see Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973), we do not believe that the Supreme Court meant to expand the scope of [Rule] 11–405(B) [NMRA] in *Baca* [,]" and noting that the language in the Supreme Court's *Baca* case on which the defendants relied "was not necessary to the court's resolution of the issues in that case").

{22} Analysis of this issue requires the conclusion that, in cases in which first and second degree murder charges are submitted to the jury, a district court need only inquire whether the jury has truly deadlocked on the greater offense of first degree murder. This is because when a jury is in deadlock on a single murder count containing first and second degree murder charges, as in the present case, it would appear to be logically inconsistent, if not a logical impossibility, for the jury to deadlock on the greater offense of first degree murder and acquit on the lesser included offense of second degree murder.[1] Thus, once the court has ascertained by inquiry of the jury that the jury was unable to reach a verdict on the first degree murder charge, we see no reason why the court should have to inquire any further down the line. Apparently, in the present case, the

---

1. The logical inconsistency, if not impossibility, is shown by this example: Assume first degree murder is comprised of elements A, B, C, and D, and second degree murder, a pure lesser included offense, is comprised of elements B, C, and D. The jury states it is deadlocked on first degree murder. Deadlock means that one or more, but not all, jurors have voted to convict on first degree murder. This means that one or more jurors have found that the State proved A and B and C and D beyond a reasonable doubt. Those one or more jurors cannot, then, logically vote to acquit on second degree murder.

district court did not think it had to continue to poll the jury as to second degree murder. Under analysis, we hold that further inquiry was not necessary under manifest necessity or double jeopardy rationales.

{23} Further, to hold lack of further inquiry in this case to be reversible error would have the effect of encouraging defendants to knowingly sit by and allow a court to err by an incomplete jury inquiry. The effect would be to permit defendants to benefit by an implied acquittal when, if the defendants had objected at the time and permitted the court to cure the problem, the inquiry would have continued, and the jury surely would have indicated that it was deadlocked on second degree murder and a mistrial as to second degree murder would have been appropriate. Such a mischievous strategy on the part of a defendant undermines the administration of justice. Of course, defense counsel may simply be ignorant of the issue at the time of polling, permitting the court to err because of that ignorance. And, of course, appellate counsel for the defendants would no doubt raise ineffective assistance of counsel for failing to alert the court to the incomplete inquiry. Nevertheless, we do not see silence of defense counsel, whether ignorant or planned, as constituting ineffective assistance of counsel under these circumstances. The circumstances do not rise to a level of objectively unreasonable defense counsel performance or prejudice to Munoz to permit a determination of ineffective assistance of counsel. *See Patterson v. LeMaster*, 2001–NMSC–013, ¶ 17, 130 N.M. 179, 21 P.3d 1032 (setting out the "reasonableness" and "prejudice" prongs of the test for a prima facie case of ineffective assistance); *see also Lytle v. Jordan*, 2001–NMSC–016, ¶ 25, 130 N.M. 198, 22 P.3d 666 (setting out two components, whether defense counsel's performance was deficient, and whether the deficient performance prejudiced the defendant).

{24} Another mischief could result from the rule Munoz advocates, which is demonstrated by what almost happened in *Wardlow*, i.e., the jury could unanimously think that the lesser included offense is simply inappropriate and could be encouraged to acquit on it, if required to state a position on it in response to a poll. For example, in the case of first and second degree murder and voluntary manslaughter, the jury could unanimously be of the opinion that there was no sufficient provocation and be hung between first and second degree murder. If the inquiry were required to proceed beyond first degree murder and all the way down to voluntary manslaughter, there is the danger of an acquittal of voluntary manslaughter, which would then preclude conviction on the higher offenses even though each and every juror believes that a defendant is guilty beyond a reasonable doubt of one or the other higher offense.

{25} Rule 5–611(D) does not change our view. When a jury is instructed as it was in the present case, and it "cannot unanimously agree upon any of the offenses submitted," Rule 5–611(D) requires that:

[T]he court shall poll the jury by inquiring as to each degree of the offense upon which the jury has been instructed beginning with the highest degree and, in descending order, inquiring as to each lesser degree until the court has determined at what level of the offense the jury has disagreed. If upon a poll of the jury it is determined that the jury has unanimously voted not guilty as to any degree of an offense, a verdict of not guilty shall be entered for that degree and for each greater degree of the offense.

{26} We first note that the committee commentary to Rule 5–611 states that paragraphs A, B, D, and E of the rule were derived from Rule 31 of the Federal Rules of Criminal Procedure and Rule 32 of the Colorado Rules of Criminal Procedure. We have reviewed those rules in their current state and with respect to our Rule 5–611(D) they are too different to assist in resolving the issues before us. It is apparent that Rule 5–611(D) was likely drafted, for the most part, based on the committee's reading of *Castrillo. See* Rule 44 NMRA (Supp.1978).

{27} We think it significant that Rule 5–611(D) requires the court to make inquiry only "until the court has determined at what level of the offense the jury has disagreed" after beginning "with the highest degree." Rule 5–611(D). This is in conformity with

our view of what should be required when the jury states it is deadlocked on a count including first degree murder and the jury has been instructed on the lesser included offense of second degree murder. That is, the court need inquire no further than first degree murder if that is the highest level of the offense at which the jury has disagreed.

{28} As we have analyzed *Castrillo* and the need or lack of need for further inquiry past first degree murder deliberations, we see no basis on which to invoke the last sentence of Rule 5–611(D) in the present case. Further, even if *Castrillo* were read as Munoz wants, *Castrillo* does not appear to have required the court to inquire whether the jury unanimously voted not guilty as to voluntary manslaughter, since the Court in *Castrillo* required retrial on that charge, holding that jeopardy did not attach to it as "the least of the included offenses." 90 N.M. at 614, 566 P.2d at 1152.

{29} Based on the foregoing analyses, we hold that the district court in the present case did not err in the manner in which it polled the jury. The court's poll was sufficient for it to conclude manifest necessity to declare a mistrial as to Count 1. Defendant could properly have been retried on first and second degree murder offenses. We therefore reject Munoz's claim that he was denied effective assistance of counsel.

### Double Jeopardy—Both Garcia and Munoz

{30} Under double jeopardy principles, Defendants assert that their convictions for shooting at a motor vehicle under Section 30–3–8(B) precluded the State from seeking a further conviction for first or second degree murder under Section 30–2–1. This issue was recently addressed adversely to Defendants' contention in *State v. Dominguez*, 2005–NMSC–001, ¶¶ 15–16, 137 N.M. 1, 106 P.3d 563.

### Exclusion of Victim's Blood Alcohol Content—Garcia and Munoz

■ {31} The district court excluded a toxicology report showing Victim's blood alcohol content (BAC) to be .245 percent at the time of his death. The court excluded the report on relevancy grounds, *see* Rule 11–402 NMRA, stating:

> [While] [i]t is certainly scientifically or medically believed that over .08 may result in impairment of the ability to safely operate a vehicle, it is not relevant to an essential element in this case or to the defense.
>
> As I understand the evidence, everyone was drinking, and the jury is certainly going to know that, and the Court feels that [that] evidence can be considered by the jury. The Court is of the opinion [the deceased's BAC] doesn't indicate whether someone is aggressive, passive, happy, sad, angry, et cetera. There is no criteria or scientifically established principle on that that I am aware of.

We review the exclusion of evidence under an abuse of discretion standard. *See State v. Stampley*, 1999–NMSC–027, ¶ 37, 127 N.M. 426, 982 P.2d 477.

{32} On appeal, Munoz asserts that the evidence would discredit the testimony of Victim's friends, who, Munoz also asserts, essentially testified that they all had not drunk much. He also states that the evidence supports his claim of self-defense, putting together the following argument. Munoz first argues that an exception to Rule 11–404(A) NMRA against admission of character evidence to prove conformity on a particular occasion allows the defense to offer evidence of a "pertinent trait of character of the victim." *See* Rule 11–404(A)(2). Munoz further argues that where the pertinent character trait of a victim goes toward proving an essential element of the defense, a defendant can prove specific instances of the victim's conduct under Rule 11–405(B). From there, Munoz argues that when the defense is self-defense, a defendant can present a victim's conduct that shows the defendant was reasonable in his apprehension of the victim and shows who was the first aggressor. Therefore, Munoz concludes, Victim's character in this case constitutes an element of self-defense that properly can be proven by a specific instance of conduct. Thus, the toxicology report was "essential to prove self-defense" and was being offered "to counteract the [S]tate's claim that a reasonable person in Mr. Munoz'[s] position would

not have shot at [Victim]" and to show that because Victim was extremely intoxicated, Munoz was reasonable in his apprehension and, further, that Victim was the first aggressor. Garcia argues that the BAC of .245 percent was relevant to Victim's state of mind and participation as first aggressor.

{33} Under an abuse of discretion test, we cannot agree that the district court's ruling was "clearly untenable or not justified by reason." *State v. Woodward*, 121 N.M. 1, 4, 908 P.2d 231, 234 (1995) (internal quotation marks and citation omitted); *State v. Litteral*, 110 N.M. 138, 141, 793 P.2d 268, 271 (1990). Nor do we think the court's ruling was "clearly against the logic and effect of the facts and circumstances of the case." *Woodward*, 121 N.M. at 4, 908 P.2d at 234 (internal quotation marks and citation omitted); *State v. Telles*, 1999–NMCA–013, ¶ 12, 126 N.M. 593, 973 P.2d 845. Although Defendants contend that evidence of Victim's .245 percent BAC would have tended to show that Defendants were reasonable in their apprehension and that Victim was the first aggressor, Defendants have not supplied authority to support this proposition. There undoubtedly is in many instances a correlation between alcohol and violence. However, as the district court observed, although it is clear that BAC may demonstrate impaired ability to drive a motor vehicle, a correlation between BAC and aggressiveness seems speculative unless tied more specifically to an individual's history. As such, the probative value of the BAC evidence in this case is questionable at best. *Cf. id.* ¶ 14 (holding BAC of .05 percent not relevant in vehicular homicide case to show that the victim somehow contributed to the accident). Even if some relevance had been found, the district court could properly have determined that any slight probative value that the BAC evidence might have had was outweighed by its prejudicial effect. *Cf. State v. Meadors*, 121 N.M. 38, 48, 908 P.2d 731, 741 (1995) (upholding the district court's limitation of cross-examination concerning the extent of the victim's drug abuse, in light of its limited probative value and the prejudicial effect of the evidence). Further, we have held that specific instances of conduct are not admissible under Rule 11–405(B) to prove Victim was

the first aggressor. *See Baca*, 115 N.M. at 540, 854 P.2d at 367.

{34} Moreover, although Defendants were not permitted to introduce Victim's BAC, evidence was presented to the jury indicating that Victim had been drinking prior to the shooting incident. For example, there was evidence that a thirty-pack of beer which was missing twenty-three cans was in Victim's car, and that Victim and his three companions each had four to six beers before they arrived at the apartment complex. There was also evidence of Victim's conduct. After Victim and his friends came to the apartment uninvited, they quickly engaged in a fight and seriously beat one of Munoz's guests. Also there was evidence that, later on, Victim tried to punch Munoz and they scuffled; one of Victim's friends had a tire iron in hand and also fought with Munoz. There was also evidence that Munoz and Garcia both saw Victim with a small caliber gun. According to some witnesses, at some point when a free-for-all erupted between the two groups, Victim tried to fire the gun into the crowd, but the gun jammed. The jury was aware of the evidence of Victim's drinking and behavior occurring before Munoz and Garcia got rifles from Munoz's apartment and Victim was back in his vehicle. As a result, we conclude that the exclusion of the BAC evidence did not prejudice Defendants. *See State v. Wildgrube*, 2003–NMCA–108, ¶ 11, 134 N.M. 262, 75 P.3d 862.

{35} Finally, the evidence of Defendants' series of shots at Victim's vehicle is plentiful. This evidence, together with the abundance of other evidence before the jury regarding Defendants and Victim, persuades us that evidence of Victim's BAC was not important to Defendants for the purpose of attempting to discredit Victim's friends' testimony. Admission of this evidence would have had a minuscule impact, if any at all, on Munoz's or Garcia's guilt or innocence. Defendants have not shown a reasonable probability that the inability to use this evidence to attempt to discredit witnesses contributed to their convictions. *See State v. Baca*, 1997–NMSC–045, ¶ 22, 124 N.M. 55, 946 P.2d 1066 ("If the court erred in denying the [d]efendant use of the evidence, no relief is warranted unless

the Defendant also shows a reasonable probability the ruling contributed to his conviction.").

{36} For all of the foregoing reasons, we hold that the district court did not err in excluding the evidence of Victim's BAC.

### Admission of Evidence Regarding Other Weapons—Garcia and Munoz

{37} In the course of the trial, several witnesses testified about the presence of firearms at the scene. Apart from the testimony concerning the rifles in question and a Luger handgun that were present in Munoz's apartment, witnesses also testified that additional firearms were contained in a truck owned by Munoz and parked in the vicinity. The weapons in Munoz's truck were a Tech .22 and a .38 caliber revolver. Defendants objected on relevancy grounds to evidence regarding these two weapons. The court allowed the evidence. Later, when the jury submitted a question to the court, "Why were the handguns in the truck?" Defendants moved for a mistrial, asserting that the evidence created a false collateral issue. Defendants also asserted that the evidence concerning the presence of the firearms in the truck was improperly placed before the jury to attempt to show nothing more than Munoz was a "gun nut," in order to inflame the jury. The motion for a mistrial was denied. Munoz asserts on appeal that the court erred in allowing this evidence—evidence that, according to Munoz, was in effect improper character evidence used by the State to inflame the jury. Garcia asserts on appeal that he was entitled to a mistrial as a result of admission of the evidence—evidence that according to Garcia, was neither relevant nor probative.

■ {38} We review the district court's decision to admit evidence under an abuse of discretion standard. *See Stampley*, 1999–NMSC–027, ¶ 37, 127 N.M. 426, 982 P.2d 477; *Baca*, 1997–NMSC–045, ¶ 22, 124 N.M. 55, 946 P.2d 1066. An abuse of discretion relating to the admission of evidence is measured by whether the district court's ruling was "clearly untenable or not justified by reason," and by whether the ruling was "clearly against the logic and effect of the facts and

circumstances of the case." *Woodward*, 121 N.M. at 4, 908 P.2d at 234 (internal quotation marks and citation omitted); *Telles*, 1999–NMCA–013, ¶ 12, 126 N.M. 593, 973 P.2d 845. A decision to grant or deny a motion for a mistrial is reviewed for an abuse of discretion. *See State v. Varela*, 1999–NMSC–045, ¶ 28, 128 N.M. 454, 993 P.2d 1280 (stating that an "[a]buse of discretion exists when the trial court acted in an obviously erroneous, arbitrary, or unwarranted manner" (internal quotation marks and citation omitted)); *State v. Simonson*, 100 N.M. 297, 301, 669 P.2d 1092, 1096 (1983); *State v. Burdex*, 100 N.M. 197, 200, 668 P.2d 313, 316 (Ct.App.1983).

■ {39} We find no abuse of discretion in this case. One of the State's witnesses testified, without objection, about the presence of one gun in Munoz's truck. The defense then cross-examined the witness on that subject, eliciting testimony that he was unaware of any other firearms in the truck and that the witness had not seen either Defendant go to the truck during the altercations. Only later, when a separate witness began to testify about his discovery of weapons in the truck, did the defense raise any objection. Because "the horse was already out of the barn" in regard to at least one gun in Munoz's truck, Defendants' objections were untimely and failed to preserve the issue for review on appeal. *State v. Neswood*, 2002–NMCA–081, ¶ 18, 132 N.M. 505, 51 P.3d 1159 (holding an objection untimely when raised after the testimony has been heard, such that the issue would not be considered on appeal).

{40} Defendants did timely object to the admission of evidence concerning the .38 caliber revolver in Munoz's truck. The State contends that the prejudicial effect of this evidence was slim to nonexistent. We agree. The jury had already heard a good deal of evidence concerning guns, including Munoz's two rifles, a Luger, and a Tech .22. The testimony concerning the presence of a .38 caliber weapon in the glove box of Munoz's truck cannot have had any prejudicial impact on the verdict. *See State v. Christopher*, 94 N.M. 648, 653, 615 P.2d 263, 268 (1980) (holding that the admission of testimony concerning the presence of a gun in the family home

may have been inadmissible, but the evidence "was miniscule [sic] in relation to the overwhelming amount of evidence" properly before the jury, such that any error was harmless and the district court properly denied a motion for mistrial); *Burdex,* 100 N.M. at 200, 668 P.2d at 316 (stating that "[e]rror in the admission of evidence is harmless if the evidence was not such that it could have substantially contributed to the conviction"). "Even if the testimony should not have been admitted, the district court acted well within the bounds of its discretion in determining that the evidence did not so taint the trial as to require a mistrial." *State v. Foster,* 1998–NMCA–163, ¶ 24, 126 N.M. 177, 967 P.2d 852; *see also Varela,* 1999–NMSC–045, ¶ 28, 128 N.M. 454, 993 P.2d 1280 (stating that the appellate court will not disturb the denial of a motion for mistrial absent an abuse of discretion).

**Exclusion of Evidence of a Prior Altercation–Garcia**

{41} Garcia contends that the district court erred in excluding evidence of a separate, earlier altercation at another location involving Victim and Munoz. We review the district court's ruling for abuse of discretion. *See Stampley,* 1999–NMSC–027, ¶ 37, 127 N.M. 426, 982 P.2d 477; *Baca,* 1997–NMSC–045, ¶ 22, 124 N.M. 55, 946 P.2d 1066.

{42} We observe that Garcia failed to make an offer of proof of the circumstances of an earlier altercation. *See generally* Rule 11–103(A)(2) NMRA (requiring a party to make an offer of proof in order to preserve error concerning the exclusion of evidence). This prevents us from evaluating the merits of Garcia's claim of error on appeal. *See, e.g., State v. Garcia,* 100 N.M. 120, 123, 666 P.2d 1267, 1270 (Ct.App.1983) (addressing Rule 11–103(A)(2) and concluding that the defendant failed to make an offer of proof necessary to preserve the issue of whether the district court properly excluded testimony).

{43} Even if the record were adequate, we believe the district court's ruling was within its discretion. It appears that the admissibility of the evidence in question is controlled by Rule 11–404(B), the "prior bad

acts" rule. Generally speaking, evidence of prior bad acts is subject to exclusion unless it bears on something other than propensity. *See State v. Niewiadowski,* 120 N.M. 361, 363–64, 901 P.2d 779, 781–82 (Ct.App.1995) (observing that evidence of "other bad acts can be admissible if it bears on [an] issue ... in a way that does not merely show propensity"); *State v. Jones,* 120 N.M. 185, 187, 899 P.2d 1139, 1141 (Ct.App.1995) (cautioning that "courts must be careful in admitting other-bad-acts evidence because of its large potential for prejudice" and observing that such evidence may only be admitted "to show some proper purpose ... that is not character or propensity"). In the course of the proceedings below, Garcia specifically argued that the evidence of the prior altercation should have been admitted because it tended to prove "that these people had the propensity ... of getting into a fight that night." Because evidence of prior bad acts for this purpose is subject to exclusion under Rule 11–404(B), the district court did not abuse its discretion in excluding the evidence.

{44} Garcia attempts to show error by contending that the evidence in question was admissible under Rule 11–404(B) as probative of motive, intent, knowledge, absence of mistake, and/or context. By this argument, we understand Garcia to suggest that the prior incident had some bearing on the issue of self-defense, as tending to establish that Victim was the first aggressor. However, evidence of the prior altercation was not admissible to show that Victim was the first aggressor. *See Baca,* 115 N.M. at 540, 854 P.2d at 367 (holding that specific incidents of a victim's conduct are not admissible to show that the victim was the first aggressor).

{45} Finally, even though the district court found the evidence of the prior incident to be more prejudicial than probative, given the limited information that is available to this Court on appeal, we are not in a position to evaluate the district court's assessment. *See State v. Rojo,* 1999–NMSC–001, ¶ 53, 126 N.M. 438, 971 P.2d 829 ("Where there is a doubtful or deficient record, every presumption must be indulged ... in favor of the correctness and regularity of the [trial] court's judgment." (internal quotation marks

and citation omitted) (alteration in original)); *State v. Brown,* 116 N.M. 705, 706, 866 P.2d 1172, 1173 (Ct.App.1993) (same).

{46} For all of the foregoing reasons, we reject Garcia's assertion of error as to the court's exclusion of evidence of a prior altercation between Victim and Munoz.

### Exclusion of Evidence Concerning Prior Convictions—Garcia

{47} Garcia asserts that the district court prohibited him from inquiring about the prior convictions of one of the witnesses for the State, Jeffrey Pate, and Garcia contends that he was improperly precluded from fully examining this witness about his motive for testifying.

{48} Although the record contains pretrial and sidebar exchanges concerning Garcia's entitlement to information about the witness's prior convictions, it is devoid of any indication that Garcia was prevented from any proper exploration of the witness's criminal background or motive. In fact, the witness admitted that he had prior convictions when he took the stand. Because Garcia failed to object to the information provided, failed to make any offer of proof, and fails to cite to relevant portions of the record, Garcia's claim of error is unpreserved, unsupported by the record, and deficiently briefed. *Cf. Rojo,* 1999–NMSC–001, ¶ 53, 126 N.M. 438, 971 P.2d 829 ("Where there is a doubtful or deficient record, every presumption must be indulged ... in favor of the correctness and regularity of the [trial] court's judgment." (internal quotation marks and citation omitted) (alteration in original)); *State v. Herrera,* 2004–NMCA–015, ¶¶ 8–9, 135 N.M. 79, 84 P.3d 696 (observing that "a defendant can waive fundamental rights, including constitutional rights," and holding that a defendant waives the right to confrontation by failing to enter an objection); *Brown,* 116 N.M. at 706, 866 P.2d at 1173 ("[O]n a doubtful or deficient record, we presume regularity and correctness in the proceedings below.").

### Admission of Photographs of Victim— Garcia

{49} Garcia challenges the admission of two photographs depicting Victim with his children, taken prior to his death, and three photographs of Victim's condition after he received the fatal gunshot wound. The court admitted the former on the ground the State was entitled to humanize Victim and the latter for the purpose of showing the nature of the injury.

{50} "A trial court has great discretion in balancing the prejudicial impact of a photograph against its probative value." *Mora,* 1997–NMSC–060, ¶ 55, 124 N.M. 346, 950 P.2d 789. We review the admission of photographs under the abuse of discretion standard. *State v. Pettigrew,* 116 N.M. 135, 139, 860 P.2d 777, 781 (Ct.App.1993). In this case, the photographs of Victim after death were used to show the nature of the injury, to explain the basis of the forensic pathologist's opinion, and to illustrate the forensic pathologist's testimony. It is well established that photographs may properly be admitted for such purposes, even if they are gruesome. *See, e.g., Mora,* 1997–NMSC–060, ¶¶ 54–55, 124 N.M. 346, 950 P.2d 789 (upholding the admission of photos of a child homicide victim on grounds they were illustrative); *State v. Perea,* 2001–NMCA–002, ¶ 22, 130 N.M. 46, 16 P.3d 1105 (holding that a potentially inflammatory photograph of a victim's face was relevant and that its admission was well within the discretion of the district court), *aff'd in part and vacated in part,* 2001–NMSC–026, 130 N.M. 732, 31 P.3d 1006; *Pettigrew,* 116 N.M. at 139, 860 P.2d at 781 (holding that photos of a battered victim were relevant to depict the extent of the victim's injuries and to illustrate a physician's testimony, and that the admission of the photos was not an abuse of discretion); *State v. Blakley,* 90 N.M. 744, 748, 568 P.2d 270, 274 (Ct.App.1977) (holding that a photograph of the body of the victim at the scene was relevant and admissible because it "illustrated, clarified, and corroborated the testimony of various witnesses"). Accordingly, we perceive no abuse of discretion in the admission of photographs of Victim after receiving the fatal gunshot wound.

{51} Garcia argues that admission of the portrait photographs of Victim

prior to his death was error because Victim's identity was not at issue and, therefore, there was no need to establish Victim's identity by use of the photographs. *Cf. State v. Baros,* 87 N.M. 49, 50, 529 P.2d 275, 276 (Ct.App. 1974) (holding that the admission of a photograph of a homicide victim for the purpose of identification was within the discretion of the district court, and determining that a family photo excluded by the court as prejudicial that was inadvertently seen by two jurors was harmless error). However, we cannot conclude that the court abused its discretion in the present case by admitting the photographs of Victim when he was alive. There no doubt may be instances in which a photograph of a victim while alive can have no legitimate purpose than to inflame the passions of the jury against a defendant, with that likely effect. But Garcia points to no particular circumstances in his case, or to any particular aspect of the admitted photographs, that necessarily move the admission of the photographs from fair humanization of Victim to unfair and prejudicial inflammation such that the court's admission of the photographs constituted an abuse of discretion. *Cf. State v. Webb,* 81 N.M. 508, 510, 469 P.2d 153, 155 (Ct.App.1970) ("The question of admissibility of photographic evidence, objected to as being inflammatory of the passions and prejudices of the jury, is largely one of discretion to be exercised by the trial court. Ordinarily, the trial court's discretion thereon will not be disturbed on appeal." (citations omitted)). Further, even if the admission of the photographs of Victim with his children was an abuse of discretion, we conclude that the error was harmless. *See State v. Roybal,* 107 N.M. 309, 312, 756 P.2d 1204, 1207 (Ct. App.1988) (holding admission of challenged evidence is harmless error where the record contains other properly admitted evidence that independently establishes guilt). The photographic evidence is minuscule in comparison with the evidence supporting Defendants' convictions, including the testimony of numerous eyewitnesses, experts, and investigators, as well as testimony that Garcia and Munoz each fired a rifle at Victim's vehicle. Because the photos are not likely to have contributed to Defendants' convictions, we conclude that reversible error was not committed. *See Baros,* 87 N.M. at 50, 529 P.2d at 276 (holding that the admission of a family photo was harmless error in light of the overwhelming evidence in support of the conviction).

## CONCLUSION

{52} We affirm the convictions of both Defendants, Garcia (Docket No. 24,072) and Munoz (Docket No. 24,065).

{53} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and CELIA FOY CASTILLO, Judges.