# IN THE COURT OF APPEALS OF IOWA

No. 21-1351
Filed October 11, 2023

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**MICHAEL ANTHONY LANDRUM,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Steven J. Andreasen, Judge.

A defendant appeals his convictions, challenging the exclusion of evidence. **AFFIRMED.**

Rees Conrad Douglas, Sioux City, for appellant.

Brenna Bird, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee.

Considered by Ahlers, P.J., Badding, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**BADDING, Judge.**

Michael Landrum stabbed two of his neighbors with a steak knife over a dispute about his cell phone. One died; the other survived. At his trial for the stabbings, Landrum claimed to have acted in self-defense. The jury found him guilty of first-degree murder, attempt to commit murder, and willful injury causing serious injury. Landrum appeals, claiming the district court abused its discretion in excluding a toxicology report that showed the decedent had methamphetamine, marijuana, and alcohol in his system at the time of his death. We affirm.

## I.    Background Facts and Proceedings

On September 10, 2020, Natasha Drappeaux was at her apartment with her fiancé, Salahadin Adem, and her neighbor from across the street—Michael Landrum. The three were drinking and enjoying the evening together, according to Drappeaux. But as the night went on, Landrum started making sexual comments to Drappeaux, telling her that he "had something hard for her." Drappeaux told him that "was disrespectful and rude," and she "didn't want whatever it was he had." Landrum then pulled out a methamphetamine pipe. The men kept drinking, and Adem started to doze off.

Around midnight, Drappeaux hid the bottle of vodka the men had been drinking in her purse. So Landrum and Adem, who had woken up by then, decided to walk to the store to get more. By that point, Drappeaux was done with them: "They were getting on my nerves. They were being kind of rowdy like . . . men do," "joking around and talking." Drappeaux asked them to leave. Before they did, she reminded Landrum that his cell phone was charging on a side table. She

unplugged the phone and gave it to Landrum with the charging cord. He put both in his pocket on the way out.

Landrum came back to Drappeaux's apartment about twenty minutes later without Adem, angrily accusing Drappeaux of taking his phone. He sat down on Drappeaux's couch and refused to leave without it. Scared, Drappeaux offered to look for his phone to calm him down. When they couldn't find it, Landrum left the apartment again, only to return about fifteen minutes later—this time with Adem. Landrum started yelling at Drappeaux about his phone again, calling her a bitch. With the situation escalating, Drappeaux told Adem to come inside. Before he could, Landrum grabbed Drappeaux by the shirt. She felt him hitting her in the side, while saying, "You bitches are going to learn." When Drappeaux raised her arms to push him back, she felt a sharp pain in her side. At that point, she realized that Landrum had stabbed her. She screamed to Adem, "[H]e is stabbing me!" Adem grabbed Landrum, and they struggled, ending up on the porch outside of the apartment.

Drappeaux followed them, screaming for help. The two men, who were still tussling, went over a small ledge on the steps up to the apartment. From the top of the steps, Drappeaux saw Adem on his knees in the grass with Landrum standing behind him. Then, as Landrum looked Drappeaux in the eyes, he stabbed Adem in the chest and slashed his face with what Drappeaux said looked like a steak knife. Drappeaux screamed at Landrum to stop, but she said that he just kept stabbing Adem.

Drappeaux ran for help, and the police were called. By the time they arrived, Landrum was gone and Adem was lying on the front stairs of the apartment

building, bleeding. The two victims were taken to the hospital, where Adem died from his injuries. Drappeaux survived after undergoing a surgery to repair a collapsed lung from a stab wound to her chest. About an hour after the stabbings, police found Landrum a couple of blocks away from the crime scene. He was arrested and charged with first-degree murder, attempt to commit murder, and willful injury causing serious injury.

In a pretrial motion in limine, the State sought to exclude a toxicology report from Adem's autopsy showing that he had methamphetamine, marijuana, and alcohol in his system when he died. At a hearing on the motion, the court asked defense counsel whether he anticipated "any evidence or testimony that would establish that whatever amount of controlled substance was found in the decedent's system would cause him to" be violent or quarrelsome. Counsel responded, "[I]t's hard to predict how the evidence will come in . . . but I think it's a relevant factor that the jury needs to be aware of since the jury will have to use their common sense." The court preliminarily ruled that "[w]ithout first establishing some connection between any usage of controlled substances by Salahadin Adem on the night in question and aggressive or violent behaviors, evidence of such usage or presence of controlled substances in his blood is not relevant."

At Landrum's jury trial, the medical examiner who performed Adem's autopsy testified that he had sixteen stab wounds and eight superficial sharp force injuries. Several of the stab wounds were to Adem's back, two to his face, and a likely fatal stab wound through his chest and heart. Based on the varied direction of the wounds, the medical examiner testified "there was probably some movement between" Adem and Landrum.

In an offer of proof outside the jury's presence, defense counsel questioned the medical examiner:

> Q. Now, you did mention earlier that there was likelihood of movement, the possibility of a lot of movement going on during the stabbing; is that correct? A. That's likely, yes.
>
> Q. Okay. Now, what is the likely effect of alcohol and drugs in the system of the person being stabbed on the movement? A. Well, it's difficult to predict because it depends upon how much of the substance there is, how tolerant a person is. Those are the biggest things. What quantity of—or how many different substances there are.
>
> There have been people who have been described as having an amount of a drug, for instance, alcohol, that would be within a fatal range for some people, and law enforcement officers can't tell that they have been drinking. So it just really depends on the individual, and it's difficult to predict.
>
> Q. In this instance, did you see the report of the toxicological analysis? A. We did submit specimens for toxicology, yes.
>
> Q. Did you look at the report? A. Yes.
>
> Q. Okay. In this case, you knew that in the system of Mr. Adem, there was alcohol, there was marijuana, and there was meth; is that correct? A. Yes.
>
> Q. Okay. Now, what are the effects of that on the altercation between Mr. Landrum and Mr. Adem? A. I don't know.
>
> Q. You don't know? Okay. So—But you have said earlier that that will be a factor; is that correct? A. It could be, yes.

Counsel then moved to admit the toxicology report. The State resisted, arguing "there is absolutely no relevance to the quantities in . . . Mr. Adem's body as to whether he was the initial aggressor." The court sustained the State's objection, finding "the danger of unfair prejudice substantially outweighs the probative value" of the evidence, especially considering the medical examiner's testimony "that she really can't determine what effect, if any, it would have had."

With the toxicology report excluded, Landrum took the stand in his own defense and painted Drappeaux as the aggressor in the fight.[1]  In that telling, Drappeaux grabbed a knife from her kitchen and told Landrum, "Get the fuck out of my motherfuckin house."  Landrum testified that he twisted the knife out of Drappeaux's hand, threw it on a table next to Adem because "he was calm," and asked for his cell phone.  When Drappeaux told Adem not to give it to him, Landrum testified that Adem picked up the knife and started walking toward him.  With his back to the door, Landrum said that he lunged at Adem and wrestled the knife away from him.  Drappeaux went out the door to her apartment, and Landrum followed with the knife.  Landrum told Drappeaux to move, but she said, "This is my motherfucking house.  I don't have to go nowhere."  So, Landrum testified, "I began to stab her."  After about three or four stabs, Drappeaux moved and Landrum walked out of the apartment building.  Adem followed him, grabbed his belt loop, and started shaking him.  Landrum testified, "So I took the knife.  I start stabbing him."

The jury found Landrum guilty as charged.  Landrum appeals following the denial of his post-trial motions and sentencing.[2]

---

[1] An officer's body-cam video shows Landrum telling the police a different story when he was arrested:
> We was all over there drinking and the girl took my phone, you know. I asked to get my phone back and she wouldn't give it back.  I grabbed her, he grabbed me.  Pulled the knife, you know, then he tried to stab me.  I took the knife and stabbed him.  Then she opened the door to try to run, we go outside.  Boom, I'm stabbing him.  She grabbed me round the neck, I stabbed her and I left.

[2] After the parties filed their final appellate briefs, Landrum filed a pro se document with the clerk of the appellate courts.  Because he is represented by counsel, we cannot consider this filing under Iowa Code section 814.6A (2020).  *See State v. Manirabaruta*, No. 20-0025, 2021 WL 4890937, at *3 (Iowa Ct. App. Oct. 20, 2021).

## II. Analysis

Landrum challenges the district court's exclusion of the toxicology report on constitutional and evidentiary grounds. Because the constitutional ground was raised for the first time in Landrum's motion for a new trial and not expressly ruled on by the district court, we agree with the State that error was not preserved on that claim. *See State v. Droste*, 232 N.W.2d 483, 488 (Iowa 1975) (stating a party cannot amplify or add new grounds as a basis for relief in a motion for new trial, which must stand or fall on exceptions taken at trial). Our focus is accordingly on Landrum's evidentiary challenge, which we review for an abuse of discretion. *See State v. Williams*, 929 N.W.2d 621, 628 (Iowa 2019).

"Only relevant evidence is admissible." *State v. Buelow*, 951 N.W.2d 879, 885 (Iowa 2020) (citing Iowa R. Evid. 5.402). Evidence is relevant if it tends "to make a fact more or less probable than it would be without the evidence" and the "fact is of consequence in determining the action." Iowa R. Evid. 5.401. In other words, evidence is relevant "if it can throw any light upon the matter contested." *Buelow*, 951 N.W.2d at 885. Yet even relevant evidence "may be excluded if its probative value is substantially outweighed by a danger of . . . unfair prejudice," as the court found it was here. Iowa R. Evid. 5.403.

Landrum argues the court abused its discretion in excluding the toxicology report under that standard because the report "would have connected Adem's meth use with violence/aggression," thereby "increasing the credibility of Landrum's claim to need to use 'deadly force to avoid injury or risk to one's life or safety.'" *See* Iowa Code § 704.3. In making this argument, Landrum relies on a case from Arizona—*State v. Plew*, 745 P.2d 102, 104 (Ariz. 1987)—that allowed

expert testimony "on cocaine intoxication to show why the victim was the aggressor and to explain how the struggle over the gun could have continued despite the shots repeatedly striking the victim." But here, there was no expert testimony linking the substances in Adem's system to violent behavior. Although Landrum argues on appeal that the medical examiner testified those substances "*would* affect the fight between Adem and Landrum," her actual testimony was only that there "*could be*" some unknown effect. (Emphasis added.)

Beyond the absence of expert testimony on the issue, there is a lack of evidence that Adem was acting violently the night of the stabbings. A video from minutes before the stabbings showed two men matching the descriptions of Landrum and Adem companionably walking back to Drappeaux's apartment. Even Landrum described Adem as calm that night, explaining that's why he threw the knife that he claimed to have wrested from Drappeaux on a table near Adem. And while Drappeaux testified that Landrum pulled out a methamphetamine pipe earlier in the evening, there was no testimony that Landrum saw Adem ingest methamphetamine or that Landrum knew Adem to become violent on methamphetamine. *See Williams*, 929 N.W.2d at 636 ("We hold that a defendant asserting self-defense or justification may not prove the victim's aggressive or violent character by specific conduct of the victim *unless* the conduct was previously known to the defendant."); *State v. Jacoby*, 260 N.W.2d 828, 838–39 (Iowa 1977) ("[I]f, prior to the homicide, the defendant . . . knew of other acts of violence of the deceased, he may, in support of his contention that he had reasonable grounds to believe himself in imminent danger from an assault by the

deceased, introduce evidence of such prior unlawful acts of violence by the deceased.").

With these facts, this case is more like two from our court that the State cited in its appellate brief—*State v. Hunter*, No. 21-1325, 2022 WL 10827449 (Iowa Ct. App. Oct. 19, 2022) and *State v. Hutchins*, No. 15-0544, 2016 WL 4051601 (Iowa Ct. App. July 27, 2016). In *Hunter*, we affirmed the district court's exclusion of evidence that a homicide victim used methadone under rule 5.403. 2022 WL 10827449, at *6. While the defendant wanted to use the evidence to show "why he reacted as he did when [the victim] assaulted him," in an offer of proof outside the jury's presence, the medical examiner "could only speculate on how methadone affected" the victim. *Id.* Because the defendant did not show a correlation between "methadone use and a propensity for violence," we concluded the court "properly exercised its discretion in excluding it." *Id.*

Similarly in *Hutchins*, we found there was "scant evidence of a . . . nexus on the day of the shooting" between the homicide victim's ingestion of drugs and violence. 2016 WL 4051601, at *6. "Given the marginal probative value of this evidence and the inflammatory nature of the testimony," we concluded "the court did not abuse its discretion in excluding the evidence." *Id.*; *see also State v. Garcia*, 110 P.3d 531, 539 (N.M. Ct. App. 2005) (finding no abuse of discretion in excluding a victim's toxicology report when the defendant failed to show a correlation between the victim's intoxication and aggressiveness); *State v. Lewis*, 166 P.3d 786, 795–96 (Wash. Ct. App. 2007) (affirming exclusion of medical examiner's testimony about the general effects of methamphetamine as "speculative and irrelevant" where the examiner could not opine about the effect

on the victim specifically); *Lawrence v. State*, 354 P.3d 77, 83 (Wyo. 2015) (finding "evidence demonstrating that the victim was under the influence of methamphetamine was not relevant to Appellant's self-defense claim" where "Appellant presented no evidence to indicate that he was aware of the victim's methamphetamine intoxication").

We agree with the State that "[b]ecause Landrum never showed that alcohol and drug use caused Salahadin Adem to become violent, the toxicology results held little or no probative value." As a result, the district court did not abuse its discretion in finding that minimal probative value was substantially outweighed by the danger of unfair prejudice. *See Hutchins*, 2016 WL 4051601, at \*6; *accord State v. Leslie*, No. 12-1335, 2014 WL 70259, at \*5 (Iowa Ct. App. Jan. 9, 2014) ("A person's use of illegal drugs is the type of highly prejudicial evidence that should be excluded."). We accordingly affirm Landrum's convictions.

**AFFIRMED.**