816 P.2d 1107

Ernest **CLARK**, Petitioner,

v.

**STATE of New Mexico, Respondent.**

**No. 19545.**

Supreme Court of New Mexico.

Aug. 22, 1991.

**486**

Mason, Rosebrough & Isaacson, Robert J. Rosebrough, Gallup, for petitioner.

Tom Udall, Atty. Gen., Gail McQuesten, Asst. Atty. Gen., Santa Fe, for respondent.

OPINION

MONTGOMERY, Justice.

In this case we consider whether the court of appeals, after determining that an improper attack on the credibility of a principal defense witness was not harmless and required reversal of two of the defendant's convictions, erred by permitting another conviction, for a different offense, to remain standing. Because we cannot conclude that the improper attack was harmless with respect to the other, affirmed conviction, we reverse.

I.

Defendant was convicted of two counts of transporting stolen livestock and one count of forgery in a trial before a twelve-person jury in the McKinley County District Court. The testimony established that on June 24, 1989, the defendant, Ernest Clark, and his brother, David Clark, drove from their home on the Navajo Reservation, towing a trailer containing three horses. The brothers drove to a trading post,

M & R Trading, located off the Reservation near Gallup, New Mexico, where they offered to sell the horses. David negotiated with employees of M & R Trading for the sale. After a price was agreed to, the brothers and the employees went into the M & R Trading business office to execute the necessary documents. The office was small and cluttered, and defendant sat down in front of the office desk. An M & R Trading employee asked the brothers who was going to sign the bill of sale. Defendant signed the bill of sale in his brother David's name. At trial defendant testified that he signed in David's name because David had injured his hand and had requested him (defendant) to sign the bill of sale for him. David likewise testified that he asked defendant to sign for him because one of the horses had kicked him, dislocating the little finger on his right hand. Nevertheless, after defendant signed David's name, David was asked to sign as a witness and did so, signing in defendant's name. The brand card used in the sale, carrying the brand which was plainly visible on the horses,[1] was issued in David's name.

At trial, David testified on behalf of defendant, his brother. During cross-examination, the prosecutor questioned David about his failure to obtain certificates of inspection for the horses before transporting them across the Reservation border, as required by New Mexico law. David denied knowledge that failure to obtain the certificates constituted an offense. In order to impeach David's statement, the prosecution sought to question David about two citations he had received for the same offense. Neither citation had led to a conviction. The court, over defense counsel's objection, allowed the prosecution to question David about the citations.

On appeal, in an unpublished memorandum opinion, the court of appeals determined that the impeaching evidence of David's citations was improperly admitted. Stating it could not conclude that the error

**1.** There was evidence that the brand issued to David was placed over another brand on the horses.

was harmless, the court reversed defendant's two convictions for transporting stolen horses. The State does not challenge the court's action in reversing these two convictions.

However, without indicating its rationale, the court of appeals left defendant's forgery conviction standing. In his docketing statement, defendant had attacked that conviction as unsupported by the evidence; the court rejected this challenge for reasons discussed below. However, neither defendant's docketing statement nor the court of appeals' memorandum opinion distinguished the effect of the inadmissible impeaching evidence on the forgery conviction from its effect on the transporting-stolen-livestock convictions. Defendant sought rehearing in the court of appeals, contending that the court's ruling on his forgery conviction necessarily invalidated that conviction along with the other convictions. The motion for rehearing was denied by operation of law after thirty days had passed. *See* SCRA 1986, 12–404(C).

We granted certiorari to consider whether the court of appeals erred in affirming the forgery conviction despite its determination that the improper attack on a principal defense witness's credibility required reversal of the other two convictions.

## II.

█ Defendant urges us to adopt a per se rule requiring reversal of all convictions obtained in a trial in which the credibility of a principal defense witness has been improperly attacked. We reject this approach at the outset. In cases involving the improper impeachment of a witness in a criminal trial, the question whether the error in the trial court requires reversal is examined under the harmless error rule. *See State v. Mills,* 94 N.M. 17, 606 P.2d 1111 (Ct.App.) (examining prejudice to defendant of improper impeachment), *cert. denied,* 94 N.M. 628, 614 P.2d 545 (1980); *State v. Day,* 91 N.M. 570, 573–74, 577 P.2d 878, 881–82 (Ct.App.) (prosecutorial misconduct including improper impeachment), *cert. denied,* 91 N.M. 491, 576 P.2d 297 (1978). This is the approach contemplated by our

rules. *See* SCRA 1986, 11–103. Not all improper attacks on the credibility of a witness require reversal.

Defendant's petition may also be read as contending that when an appellate court has in fact determined that an improper attack on a witness's credibility was not harmless error, the court must then reverse all convictions obtained in the trial. However, we cannot accept this principle either. The harmless error rule contemplates that error may be prejudicial with respect to one conviction, but harmless with respect to another.

Here, the court of appeals held that the error which occurred at trial was prejudicial since it could not be determined "that the improperly admitted impeaching evidence did not contribute to defendant's conviction[.]" Without explanation, however, the court reversed only defendant's convictions for transporting stolen horses, leaving the forgery conviction standing. In light of the applicability of the harmless error rule, we can only conclude from this that the court determined that the error was prejudicial only as to the convictions which were reversed and that it deemed the error harmless with respect to the conviction for forgery. If its determination were correct, the court could properly have affirmed the forgery conviction. Upon our review of the record on appeal, however, we cannot conclude that the error was harmless with respect to that conviction; accordingly we reverse.

## III.

█ Error in the admission of evidence in a criminal trial must be declared prejudicial and not harmless if there is a reasonable possibility that the evidence complained of might have contributed to the conviction. *See State v. Trujillo,* 95 N.M. 535, 541, 624 P.2d 44, 50 (1981). We note that where the improper evidence has been used for impeachment purposes, not only does the error permit the jury to consider the substantive effect of the evidence itself; it also discredits the testimony of the witness, including, of course, the defendant if he or she has testified. Both ef-

fects must be considered in determining whether the error was harmless.

Here, the improper impeachment could have affected the jury's verdict in both ways. First, the evidence suggested that defendant's brother David had at other times been involved in illegal conduct similar to that with which defendant was charged. This could well have placed defendant in an unfavorable light in the eyes of the jury, since David was with defendant at the time of the alleged offenses and was a participant in the transaction involving the horses. Additionally, the evidence could have given rise to an inference in the minds of the jurors of defendant's criminal intent with respect to the forgery conviction by association with his brother's alleged "bad acts."

Second, the improper impeachment undermined the credibility of David's testimony, which tended to exonerate defendant of the charge of forgery by corroborating his assertion that he was authorized to sign the bill of sale in his brother's name. It is clear, we think, that "wherever authority is given to sign the name of another to a writing, there can be no forgery." [2] 36 Am.Jur.2d *Forgery* § 9 (1968); *see State v. Lopez*, 81 N.M. 107, 110, 464 P.2d 23, 26 (Ct.App.1969) (implication that defendant, who claimed authorization, was not authorized in fact to sign name of another supported conviction for attempted forgery), *cert. denied*, 81 N.M. 140, 464 P.2d 559 (1970).

■ We cannot say, therefore, that there is no possibility that admission of the impeaching evidence did not contribute to defendant's conviction. The only evidence we can discern in support of the forgery conviction are the facts that defendant signed the bill of sale in his brother David's name, that David's name appears on the brand card, and that, despite defendant's contention that his brother asked him to sign the bill of sale because his hand hurt, David nevertheless signed the bill of sale as a witness.

On the other hand, defendant introduced evidence that he was authorized by his brother to sign his name. The State has failed to point to any evidence contradicting defendant's claim of authorization or presenting an alternative version of the facts. The State does point out that David signed the bill of sale as a witness. However, this fact alone is not sufficient to support an inference that defendant was not authorized to sign his brother's name. That David used his hand to sign as a witness is equally susceptible to the innocent conclusion that he did not realize, when he authorized his brother to sign, that a witness would be necessary for the sale and that he then signed, despite his injury, upon learning of the requirement. More importantly, no other evidence was presented to suggest lack of authorization. There is no indication why defendant would have had a motive to sign his brother's name without authorization when his brother had negotiated the sale and was in the same room with defendant at the time of the signing and when defendant had not held himself out as his brother.

We conclude that the evidence was not so persuasive of defendant's guilt as to negate a reasonable possibility that the improper evidence and the attack on the credibility of a principal defense witness induced the jury's verdict. *See Day*, 91 N.M. at 574, 577 P.2d at 882 (even where substantial evidence supported convictions, where

---

**2.** We do not accept the State's contention that David's testimony, in light of the jury instruction given in the case, was not relevant to, and thus could not have affected, the forgery conviction. The instructions required the State to prove that "the defendant made a false signature," and that "at the time, the defendant intended to injure or defraud M & R Trading or another." SCRA 1986, 14–1643. The State focuses entirely on the first element, arguing that the issue of authorization was irrelevant to whether defendant made a "false signature."

However, no definition of the term "false signature" was given, and the jury could well have believed, in accordance with the substantive law, that an authorized signature was not "false." *See* R. Perkins & R. Boyce, *Criminal Law* ch. 4, § 8(c) at 427 (3d ed. 1982). However, even if the jury did not believe authorization was relevant to the first element, it may well have thought the issue relevant to whether defendant signed his brother's name with a fraudulent intent.

there is also substantial exculpatory evidence dependent upon defendant's credibility, prosecutorial misconduct introducing impeaching evidence against defendant could not be held harmless). The error was not harmless.

The court of appeals rejected defendant's challenge to the forgery conviction as unsupported by the evidence, reasoning that "the jury was free to reject defendant's version of the incident." However, if the jury rejected defendant's version of the incident, the question remains what version the jury could have accepted. On the uncontradicted state of the record before this Court, no version of the incident was put forward which would enable the jury to find beyond a reasonable doubt that defendant was not in fact authorized. On remand, the trial court should reconsider defendant's motion for a directed verdict in light of defendant's defense of authorization and any countervailing evidence.

The judgment is reversed and the cause is remanded to the district court for a new trial or other proceedings consistent with this opinion.

IT IS SO ORDERED.

SOSA, C.J., and BACA, J., concur.