2005-NMCA-108

118 P.3d 752

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Marvin FIELDER, Defendant–Appellant.**

**No. 24,190.**

Court of Appeals of New Mexico.

June 22, 2005.

Certiorari Granted, No. 29,340, Aug. 12, 2005.

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Sheila Lewis, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} Defendant appeals his convictions of third degree criminal sexual penetration (CSP III), aggravated battery, and false imprisonment. He does not challenge a fourth conviction of larceny. His briefs raised the following three double jeopardy issues: (1) that his conviction at a second trial of CSP III, after he was tried for CSP II at a first trial that resulted in neither a verdict nor any inquiry into the degree of CSP on which the jury was hung, compels a discharge on all levels of CSP; (2) that his conviction of false imprisonment as well as CSP, which necessarily involves the confinement of a victim, compels a discharge on the false imprisonment count; and (3) that the prosecutor's conduct in the first trial during jury deliberations, in obtaining instruction on CSP III and in subsequent supplemental closing argument, was sufficiently egregious conduct to require a discharge on all counts under *State v. Breit*, 1996-NMSC-067, 122 N.M. 655, 930 P.2d 792.

{2} We agree with Defendant that his double jeopardy rights were violated by the State's prosecution of Defendant at the second trial for CSP II because there was no manifest necessity for a mistrial on that charge during the first trial. However, the remedy for the violation is a retrial on that count with the highest exposure being to CSP III. Further, we hold that the prosecutor's conduct did not rise to a level compelling a dismissal under *Breit*. Therefore, there is no double jeopardy bar to further trials. However, we believe that the double jeopardy error of submitting CSP II to the jury during the second trial tainted all of the convictions resulting from that trial, and therefore the proper remedy is to reverse the three convictions and remand for a third

trial. Finally, we hold that false imprisonment, while a lesser included offense of CSP II, is not a lesser included offense of CSP III because the crimes have different elements.

## FACTS AND BACKGROUND

{3} Victim made a 911 call to the police department and reported that she had just been raped inside her home. Victim stated that she had been unable to see the perpetrator's face throughout the incident. Furthermore, she reported that the perpetrator was armed with a knife during the incident. When the police arrived to interview Victim, Victim realized that her television and VCR were missing from her living room. After the police searched the area, the police noticed a trail of footprints leading from Victim's house to Defendant's house. After receiving consent to enter Defendant's home, the police found a VCR and television with serial numbers that matched those that they had received from Victim. Defendant was arrested for theft of Victim's property.

{4} Subsequently, Defendant admitted that he had had sexual intercourse with Victim on the night in question, although Defendant stated that the intercourse was consensual. Furthermore, Defendant stated that Victim had agreed to lend him her television and VCR. Further investigation by the police led them to discover clothes in Defendant's home that matched those described by Victim as the type worn by the perpetrator. However, even after conducting a thorough search of the area, the police were unable to locate the knife Victim had described as being used by the perpetrator. Although the knife was not found, Defendant was eventually indicted for criminal sexual penetration of Victim while armed with a deadly weapon (CSP II).

{5} Defendant was charged with four counts: Count 1 charged aggravated burglary, Count 2 charged CSP II, Count 3 charged false imprisonment, and Count 4 charged larceny. At the first trial, after the State and Defendant had presented their cases, the four counts were submitted to a jury and, after several hours of deliberation, the jury sent a written question to the court. Specifically, the jury's question dealt with Count 2,

which charged Defendant with CSP II. The jury asked the following question:

"If we think there was not a knife, must we acquit on Count 2, item two?"

The court, after discussing the jury's question with both parties, responded to the inquiry by directing the jury to "please read instruction No. 7 in its entirety." Instruction 7 was the elements instruction for CSP II, and item two of it required the jury to find that Defendant was armed with and used a deadly weapon.

{6} Shortly thereafter, the State moved the court to supplement the jury instructions by adding an instruction for criminal sexual penetration without the use of a deadly weapon, CSP III, as a lesser included offense of Count 2. After hearing arguments from both the State and Defendant, the court granted the State's request to allow CSP III as a lesser included offense of Count 2 over Defendant's strong objection. While the court allowed the jury to continue deliberating on the other counts, the court asked the jury not to deliberate any further on Count 2 until receiving further instructions from the court. Defendant then requested that the court allow both parties to briefly provide additional closing arguments to the jury concerning the charge of CSP III. The court granted Defendant's request. The jury was then called back into the courtroom, where the court instructed the jury on the charge of CSP III. The court then informed the jurors that, as to Count 2, they were to first consider the charge of CSP II and, if they had a reasonable doubt as to that charge, they were to begin deliberating the CSP III charge.

{7} Upon completion of the court's oral instructions to the jury, the court allowed both the State and Defendant to make closing arguments concerning the supplemental jury instructions. In its supplemental closing argument, the State made the following statement:

We looked at your questions and tried to define what you were thinking in the jury room, and we came up with two possible answers. Clearly, you were concerned about the element that said Defendant was armed and used a deadly weapon, and the

Defendant used a knife. We don't think you had a problem with the rest of it, which talks about what the definition of a deadly weapon is. One possibility we thought of was that you were concerned about what ["]used a knife["] meant. Another possible concern we thought you had was what happens if you don't think there was any knife at all.

Defendant did not object to this argument.

{8} After closing arguments, the jury deliberations reconvened. Shortly afterwards, the jury foreperson informed the court that the jury had reached a verdict on the count of larceny, but that it was unable to reach a decision on the other counts. The jury was then called in. The foreperson of the jury announced that as to the charge of larceny, the jury had found Defendant guilty. After both parties declined the court's offer to poll the jury as to the larceny charge, the following dialogue occurred between the court and the jury foreperson:

THE COURT: Very well.

The Court having inspected the verdict forms as to Counts 1, 2 and 3, and taken the information from the jury that they cannot reach a decision, the Court then declares a mistrial as to Counts 1, 2 and 3.

Ms. Coogler, having done that, the Court needs to know what the numerical split of the jury was on its last vote as to guilty and not guilty?

JUROR COOGLER: We have that piece of paper in there. Could I refer to it?

THE COURT: If you need it. If you don't recall the numerical decision now, then you may get the note, or the bailiff may get it for you.

JUROR COOGLER: Okay, Your Honor, on the aggravated burglary, which I believe is the first one, two felt that he was guilty and 10 felt that he was not guilty. On the second one, which was the criminal sexual penetration, nine felt that he was guilty and three felt that he was not guilty. On the false imprisonment, 10 felt he was guilty, and two felt he was not guilty.

The court then excused the jury.

{9} Thereafter, Defendant was retried on charges of aggravated burglary, false impris-

onment, CSP II, and CSP III. His second trial ended in convictions for CSP III, aggravated burglary, and false imprisonment. Defendant appeals these convictions, claiming that his double jeopardy rights were violated in a variety of ways.

## DISCUSSION

**1. Defendant's right to be free from double jeopardy was violated by the State's prosecution of Defendant for CSP II at the second trial because there was no manifest necessity for the court to declare a mistrial as to that charge during the first trial.**

{10} Defendant argues that his conviction of CSP III must be set aside because the first trial ended in an implied acquittal of CSP II, and the double jeopardy clauses of both the state and federal constitutions bar successive prosecutions following an acquittal. Although we agree with Defendant's contention that his double jeopardy rights were violated when the State prosecuted him a second time for CSP II, we conclude that the proper remedy for such a violation is not to bar all successive prosecutions, but to order a retrial on the CSP count with the highest degree of exposure being to CSP III. We review double jeopardy claims de novo. *State v. Segura*, 2002–NMCA–044, ¶ 7, 132 N.M. 114, 45 P.3d 54.

{11} Defendant relies on *State v. Castrillo*, 90 N.M. 608, 566 P.2d 1146 (1977), *overruled on other grounds by State v. Wardlow*, 95 N.M. 585, 588, 624 P.2d 527, 530 (1981), and Rule 5–611(D) NMRA to support his argument that his conviction of CSP III must be set aside because the first trial ended in an implied acquittal of CSP II and his right to be free from double jeopardy bars successive prosecutions of all degrees of the offense following an acquittal of any degree. Relying on the same authority and our recent decision in *State v. Garcia*, 2005–NMCA–042, 137 N.M. 315, 110 P.3d 531, we rule that Defendant's double jeopardy rights were violated when he was tried for CSP II at a second trial. However, we further hold that the proper remedy is to order a retrial, at which the highest degree that Defendant can be tried for is CSP III.

{12} In *Castrillo*, charges of first and second degree murder and voluntary manslaughter were submitted to the jury in the defendant's first trial. 90 N.M. at 610, 566 P.2d at 1148. However, the jury was unable to reach a verdict. *Id.* The court declared a mistrial without inquiring into which of the specific included offenses the jury had either agreed or disagreed upon. *Id.* at 613, 566 P.2d at 1151. The defendant was retried and found guilty of second degree murder. *Id.* at 610, 566 P.2d at 1148. On appeal, the defendant argued that his prosecution in the second trial was a violation of his right to be free from double jeopardy. *Id.* Although our Supreme Court noted that a manifest necessity to declare a mistrial was shown since the jury was hung between acquittal and at least one of the offenses included within the murder charge, the Court stated that the record was "silent upon which, if any, of the specific included offenses ... the jury had reached an impasse." *Id.* at 613, 566 P.2d at 1151. Thus, based on double jeopardy grounds, the Court dismissed all offenses on which the record was unclear. *Id.* The Court stated:

> [T]he record is not clear as to which of the included offenses the jury was considering at the time of its discharge. Without inquiry by the trial court into the jury's deliberations on the greater, included offenses, no necessity is manifest to declare a mistrial as to those offenses and thus jeopardy has attached. Jeopardy did not attach to the offense of voluntary manslaughter which was the least of the included offenses. Had the jury reached a unanimous decision on that offense it could not have been in the posture it announced to the court.

*Id.* at 613–14, 566 P.2d at 1151–52. In effect, failing to ascertain a deadlock as to each level of the charge that the jury is deliberating requires dismissal of all but the least of the lesser included charges submitted to the jury.

{13} In *Garcia*, the issue before us was whether the district court committed error when it inquired into the jury deliberations as to the greater offense, but did not continue its inquiry into the jury's deliberations of the lesser included offenses. 2005–NMCA–042, ¶ 10, 137 N.M. 315, 110 P.3d 531. In that case, the defendant was charged with a count of first degree murder, and the jury was instructed on second degree murder and voluntary manslaughter as lesser offenses within the same count. *Id.* ¶ 2. When the jury informed the court that it could not reach agreement as to the murder count, the court declared a mistrial. *Id.* ¶ 20. However, after the court declared a mistrial, the court inquired as to the jury's deliberations regarding the charge of first degree murder. *Id.* The jury's foreperson stated that the jury had been unable to reach a unanimous agreement as to that charge. *Id.* The court then concluded its inquiry without inquiring into the jury's deliberations on the lesser offenses included within the count of murder. *Id.*

{14} After analyzing *Castrillo* and its progeny, we concluded that nothing in *Castrillo* required a district court to continue its inquiry into the jury's deliberations regarding lesser offenses when the court has determined, through its inquiry, that the jury was unable to reach agreement as to a greater offense. *Garcia,* 2005–NMCA–042, ¶ 17, 137 N.M. 315, 110 P.3d 531. In *Garcia*, we noted that our holding was consistent with Rule 5–611(D), which requires that:

> If the jury has been instructed on one or more lesser included offenses, and the jury cannot unanimously agree upon any of the offenses submitted, the court shall poll the jury by inquiring as to each degree of the offense upon which the jury has been instructed beginning with the highest degree and, in descending order, inquiring as to each lesser degree until the court has determined at what level of the offense the jury has disagreed.

2005–NMCS–042, ¶¶ 25–27. Thus, in *Garcia*, we determined that the district court did not err in the manner in which it inquired as to the jury's deliberations, and we concluded that the defendant's retrial and subsequent conviction of first degree murder did not violate his double jeopardy rights because there was a manifest necessity to declare a mistrial at that level of the charge. *Id.* ¶ 29.

{15} In the present case, contrary to Rule 5–611(D) and our Supreme Court's holding in *Castrillo*, the district court did not inquire

into the jury's deliberations beginning with the greater offense of CSP II. Here, under Count 2, the jury received instructions for charges of CSP II and CSP III. However, when the district court inquired as to the jury's deliberations, it simply requested that the foreperson of the jury provide the court with the numerical split of the jury as to guilty and not guilty. The court did not inquire as to each degree included in Count 2, beginning with the highest degree, which in this case would have been CSP II. Without inquiry by the trial court into the jury's deliberations on the greater offense, there was no manifest necessity to declare a mistrial as to that offense and therefore jeopardy attached to that offense. *See Castrillo,* 90 N.M. at 613–14, 566 P.2d at 1151–52. Therefore, we conclude that Defendant's double jeopardy rights were violated when he was prosecuted at the second trial for CSP II.

■ {16} Although we have determined that Defendant should not have been prosecuted at the second trial for CSP II, we do not agree with Defendant that it would be a violation of his double jeopardy rights to order a retrial where the highest exposure Defendant would face would be for CSP III. In *Castrillo,* the Court held that a dismissal on double jeopardy grounds is required for such offenses where the record is silent upon which of the specific offenses the jury had agreed and upon which the jury had reached an impasse. *Id.* In that case, the Court did not dismiss the lower offense because the Court noted that "[h]ad the jury reached a unanimous decision on that offense it could not have been in the posture it announced to the court." *Id.* at 614, 566 P.2d at 1152. The same holds true for the present case. Here, the record is clear that the jury reached an impasse regarding the CSP III charge because, as in *Castrillo,* "[h]ad the jury reached a unanimous decision on that offense it could not have been in the posture it announced to the court." *Id.* Thus, we hold that there was a manifest necessity to declare a mistrial as to the CSP III charge, and therefore no double jeopardy attached to that offense, and Defendant can be retried on that charge without violating his double jeopardy rights.

{17} Furthermore, we find no merit in the State's argument that Defendant's double jeopardy rights were not violated because Defendant was only convicted of CSP III at his second trial, and therefore he suffered no prejudice due to his second prosecution for CSP II. The United States Supreme Court expressly rejected this contention in *Price v. Georgia,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970):

> The Double Jeopardy Clause, as we have noted, is cast in terms of the risk or hazard of trial and conviction, not of the ultimate legal consequences of the verdict. To be charged and to be subjected to a second trial for first-degree murder is an ordeal not to be viewed lightly. Further, and perhaps of more importance, we cannot determine whether or not the murder charge against petitioner induced the jury to find him guilty of the less serious offense of voluntary manslaughter rather than to continue to debate his innocence.

*Id.* at 331, 90 S.Ct. 1757 (footnote omitted).

■ {18} Defendant contends that this language means that he must be discharged on all degrees of CSP. We disagree. In the very next paragraph of *Price,* the Supreme Court indicated that the possibility of retrial on the lesser offense, which would not be prohibited by double jeopardy principles, was a matter for state law. *Id.* at 332, 90 S.Ct. 1757. Our Supreme Court has determined in *Castrillo* that retrial on the lesser offense in these circumstances is permissible. 90 N.M. at 614, 566 P.2d at 1152. A so-called "implied acquittal" of a greater charge either when a defendant is actually convicted of a lesser charge or when the jury is hung as to a lesser charge does not operate to prohibit conviction on that lesser charge. *See id. State v. Lynch,* 2003–NMSC–020, 134 N.M. 139, 74 P.3d 73, which involved a prosecution for first degree murder after a prosecution at which second degree murder was the highest offense submitted to the jury, is not to the contrary.

**2. The prosecutor's conduct in this case did not rise to the level of *Breit,* and therefore there is no double jeopardy bar to further trials.**

■ {19} Defendant argues that the prosecutor's conduct in this case was so outra-

geous as to rise to the magnitude contemplated in *Breit,* 1996–NMSC–067, 122 N.M. 655, 930 P.2d 792, and therefore double jeopardy bars the reprosecution of Defendant on any offenses arising out of the indictment for which he was not found guilty at the first trial. Specifically, Defendant contends that the State caused a mistrial at the first trial by (1) improperly seeking to have the court instruct the jury on the CSP III charge, which was not supported by the evidence; (2) seeking the instruction after the jury began deliberations; and (3) injecting itself into the jury deliberation process during closing arguments regarding the CSP III charge.

{20} In *Breit,* the Court held:

[W]hen a defendant moves for a mistrial, retrial, or reversal because of prosecutorial misconduct: Retrial is barred under Article II, Section 15, of the New Mexico Constitution, when improper official conduct is so unfairly prejudicial to the defendant that it cannot be cured by means short of a mistrial or a motion for a new trial, and if the official knows that the conduct is improper and prejudicial, and if the official either intends to provoke a mistrial or acts in willful disregard of the resulting mistrial, retrial, or reversal.

1996–NMSC–067, ¶ 32, 122 N.M. 655, 930 P.2d 792. The Court went on to state that an isolated instance of misconduct will rarely be so prejudicial as to cause a mistrial. *Id.* ¶ 33. Furthermore, the Court held that the term "willful disregard" connotes a conscious and purposeful decision by the prosecutor to dismiss any concern that his or her conduct may lead to a mistrial or reversal. *Id.* ¶ 34.

{21} In the present case, the result of the prosecutor's actions was a mistrial, but we cannot say that the prosecutor was acting in willful disregard of a mistrial, retrial, or reversal. First, the case on which Defendant relies for the proposition that the jury should not have been instructed on a lesser included offense for the first time during deliberations, *State v. Villa,* 2004–NMSC–031, 136 N.M. 367, 98 P.3d 1017, was not decided until a full year and a half after the first trial in this case. Second, it appeared that the prosecutor was not fomenting a mistrial as much as trying to obtain a conviction of some degree of CSP and thus end the proceedings during the first trial.

{22} Defendant rests much of his argument concerning prosecutorial impropriety on the prosecutor's statement we previously quoted in paragraph 7 in which the prosecutor specifically addressed the jurors about his suppositions as to their thinking underlying their question to the court about the knife. Defendant contends that this statement by the prosecutor indicates a level of misconduct so unfairly prejudicial to Defendant that, pursuant to *Breit,* Defendant's convictions should be reversed and the State should be barred from retrying Defendant. We disagree.

{23} Although we agree with Defendant that it was improper for the prosecutor in this case to inject himself into the jury's deliberations through his closing argument, we conclude that this lone instance does not rise to the level of misconduct articulated in *Breit.* *See* 1996–NMSC–067, ¶¶ 32–36, 122 N.M. 655, 930 P.2d 792. Nor do we believe that seeking the lesser offense instruction after hearing of the jury's concern rises to the level of misconduct articulated in *Breit.* *See id.* We do note that this type of behavior is considered error in at least one federal circuit, *see United States v. Yarborough,* 400 F.3d 17, 19–22 (D.C.Cir.2005), a holding with which New Mexico courts would likely agree in light of *Villa.* *But see State v. Wall,* 94 N.M. 169, 171, 608 P.2d 145, 148 (1980) (permitting supplemental instruction on accessory liability), *overruled on other grounds by State v. Lucero,* 116 N.M. 450, 453, 863 P.2d 1071, 1074 (1993). However, such behavior appears to be accepted in at least one jurisdiction that seeks more jury involvement in the trial process. *See Yarborough,* 400 F.3d at 21–22. In any event, because the question before us is whether that conduct was sufficiently egregious to invoke the extreme remedy of barring further prosecution, we need not decide the question of the propriety of the prosecutor's conduct in this case.

{24} The Court in *Breit* noted that the prosecutorial misconduct in that case led to a "trial out of control." 1996–NMSC–067, ¶ 41, 122 N.M. 655, 930 P.2d 792 (internal quotation marks and citation omitted). The Court

also went on to indicate that the prosecutor's misconduct in that case began "[b]arely into his opening statement" and continued through to closing. *Id.* ¶¶ 41–43 (internal quotation marks and citation omitted). Furthermore, the Court stated that the prosecution in that case used "unfair, unethical[,] and constitutionally impermissible trial tactics" in order to secure a conviction at any cost. *Id.* ¶ 85.

{25} The prosecutorial misconduct described in *Breit* is a far cry from the improper language used in one instance by the prosecutor in this case. We conclude that our Supreme Court's decision in *Breit* was not intended to bar retrials based on the slightest prosecutorial misconduct. The Court in *Breit* stated, and we agree, that "[r]aising the bar of double jeopardy should be an exceedingly uncommon remedy." *Id.* ¶ 35. Finally, because of the evidence that the police found no knife, the instruction on CSP III was supported by the evidence. *See State v. Fish,* 102 N.M. 775, 778–79, 701 P.2d 374, 377–78 (Ct.App.1985) (holding that where no knife was ever found and the victim was not cut, a jury could reject the victim's testimony about a knife and convict of CSP III). Therefore, under the facts of this case, we conclude that the prosecutor's conduct was not such improper conduct to bar the State from retrying Defendant.

**3. The nature and impact of the double jeopardy violation was such that it infected all of the convictions obtained at the second trial, and therefore we reverse all three convictions and remand for a new trial.**

■ {26} As indicated above, *Price* and *Castrillo* require a reversal of the CSP III conviction and allow for the possibility of retrial on that count. The State contends that it should be only the CSP charge, if any, that is required to be retried. Defendant, on the other hand, contends that retrial on any charge is barred, but if retrial is allowed, it should be on all charges. Apart from the *Breit* rationale, which we have already rejected, Defendant does not cite any specific authority for the proposition that he is entitled to be discharged on all counts arising from a trial in which a higher degree of one count was submitted to the jury erroneously under double jeopardy principles. He does cite the language from *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), which was persuasive to the Court in *Breit,* 1996–NMSC–067, ¶ 9, 122 N.M. 655, 930 P.2d 792:

> "The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

*Id.* (quoting *Green,* 355 U.S. at 187–88, 78 S.Ct. 221). But while we believe that this language counsels us to apply a lenient standard of harmless error to the double jeopardy error we hold to be present in this case, we do not believe that it requires Defendant's discharge on all counts. *See State v. Lopez,* 99 N.M. 791, 794–95, 664 P.2d 989, 992–93 (Ct.App.1982) (holding that fourth trial after properly declared mistrials in earlier trials did not violate double jeopardy). We also believe that Defendant, by his appeal, either has waived any non-*Breit* plea of former jeopardy or has acted to continue the jeopardy. *See Green,* 355 U.S. at 189, 78 S.Ct. 221.

{27} Nonetheless, we believe that the circumstances of this case counsel that the double jeopardy error of trying Defendant a second time for CSP II, when he should not have faced trial on that charge, spilled over to and infected not only the conviction of CSP III, but also the convictions of aggravated burglary and false imprisonment. We recognize that the jury was instructed at both trials for aggravated burglary that it could find Defendant guilty if he either was or became armed with a knife or committed a battery inside and that the knife did not form any part of the elements of false imprisonment. But the factual basis of all of the charges was bound up with the presence of

the knife, which in turn appeared to be a critical part of the jury's deliberations. The presence or absence of a knife was the lynch pin distinguishing CSP II from CSP III. The knife was central in two of the three alternative ways of committing aggravated burglary. Finally, the knife was part of the means used to commit the false imprisonment. We do not know what the result would have been during the second trial had Defendant not been tried for CSP II, committed with a knife. As the United States Supreme Court said in *Price*, the jury's debate could have been entirely different without the presence of the contaminating higher offense. 398 U.S. at 331, 90 S.Ct. 1757.

{28} Our own cases, discussing the concept of harmless error in the evidentiary context, are to a like effect. *Clark v. State*, 112 N.M. 485, 816 P.2d 1107 (1991), is a pertinent example. After establishing that error in the admission of evidence cannot be deemed harmless if there is a reasonable possibility that it contributed to the conviction, the Court turned to an analysis of each charge. *Id.* at 487–88, 816 P.2d at 1109–10. And, in analyzing each charge, the Court took into account any possibility that the jury could have used the erroneously admitted evidence, either substantively or for impeachment. *Id.* at 488, 816 P.2d at 1110. The Court was concerned that the improper evidence would cause the jury to look at the defendant in an unfavorable light, thus inducing the verdict against him. *Id.*

{29} We believe that it is appropriate to evaluate the effect of the CSP II charge on the remaining charges because of the importance of the double jeopardy principle as outlined in *Green*, 355 U.S. at 187–88, 78 S.Ct. 221. The prohibition of retrial on a greater offense when there is no inquiry as to whether a mistrial was necessary on that greater offense was established in *Castrillo* almost 30 years ago, and we are still finding prosecutors violating defendants' *Castrillo* rights, such as occurred in this case. As is the case with prosecutorial comment on a defendant's silence, where we apply a rule of automatic reversal regardless of objection as a prophylactic measure, *see State v. Hennessy*, 114 N.M. 283, 285–86, 837 P.2d 1366,

1368–69 (Ct.App.1992), *overruled on other grounds by Lucero*, 116 N.M. at 453, 863 P.2d at 1074, we must be alert to the prejudicial effect that an improper additional charge might have on the jury's conviction on the remaining charges. If we cannot determine the effect, retrial on the remaining charges is necessary. Thus, we reverse the CSP III, aggravated burglary, and false imprisonment convictions and remand them for a new trial.

**4. CSP III and false imprisonment are separate offenses upon which a defendant may be separately convicted and sentenced.**

{30} Defendant claims that his double jeopardy rights were also violated by his conviction and sentence for both CSP III and false imprisonment based on the same facts. He relies on *State v. Pisio*, 119 N.M. 252, 259, 261–62, 889 P.2d 860, 867, 869–70 (Ct. App.1994), and *State v. Corneau*, 109 N.M. 81, 87–88, 781 P.2d 1159, 1165–66 (Ct.App. 1989). However, those cases involved CSP II in the commission of a felony where the felony was the restraining of the victim that could occur during any CSP. *Pisio*, 119 N.M. at 259–60, 889 P.2d at 867–68; *Corneau*, 109 N.M. at 85–87, 781 P.2d at 1163–65. The State properly argues, relying on *Swafford v. State*, 112 N.M. 3, 14, 810 P.2d 1223, 1234 (1991), that reviewing the elements of these crimes is the proper test to determine if double jeopardy is violated by separate convictions and sentences. So doing, it can be seen that the commission of a felony is an element of CSP II committed in the commission of a felony whereas the elements of CSP III and false imprisonment are distinct. CSP III requires sexual conduct perpetrated through force or coercion, whereas false imprisonment does not require sexual conduct and requires knowledge that the perpetrator has no authority to restrain or confine the victim. *See* NMSA 1978, § 30-4-3 (1963); NMSA 1978, § 30-9-11(A), (E) (2003). The difference in elements, according to *Swafford*, gives rise to a presumption that the legislature intended separate punishments. 112 N.M. at 14, 810 P.2d at 1234.

{31} We next look at the social evils sought to be prevented, construing them nar-

rowly, as well as the quantum of punishment for each offense. *Id.* at 14–15, 810 P.2d at 1234–35. The CSP statute is designed to prevent unwanted sexual violence while the false imprisonment statute is designed to prevent unlawful restraint of any sort. *See id.* at 15, 810 P.2d at 1235 (discussing the difference between the elements of CSP and incest). In addition, CSP III is a third degree felony punishable by three years of imprisonment while false imprisonment is a fourth degree felony punishable by one and one-half years of imprisonment. *See* § 30–4–3; § 30–9–11(D)(5); NMSA 1978, § 31–18–15(A)(7), (8) (2003). If there is a CSP that is committed during the commission of a separate false imprisonment, the crime may be punished as CSP II, which is a second degree felony punishable by nine years of imprisonment. *See* § 30–9–11; § 31–18–15(A)(4). Under these circumstances, we believe that the legislature likely intended CSP III and false imprisonment to be separately punished by four and one-half years of imprisonment in appropriate cases within the prosecutor's discretion.

{32} Defendant argues, however, that the *Swafford* analysis is not correctly applied to his offenses in the above manner because this Court has already decided, in *State v. Crain*, 1997–NMCA–101, ¶¶ 15–22, 124 N.M. 84, 946 P.2d 1095, that the legislature did not intend separate punishment for every offense of restraint that is necessarily included as a factual matter within every offense of CSP. We do not agree that *Crain* went so far.

{33} *Crain* concerned a defendant who was convicted of two counts of CSP II (one with personal injury and one in the commission of a felony) and of the separate charge of kidnapping. *Id.* ¶ 15. The kidnapping itself was the very felony involved in the CSP II, based on one factual episode that did not involve restraint apart from that necessary to the CSP. *Id.* ¶¶ 15, 17. We first analyzed the two CSP offenses and found that they had different elements. *Id.* ¶ 19. We therefore presumed different offenses. *Id.* However, we noted that both methods of committing CSP II were simply ways of increasing the degree of seriousness of a CSP III offense, and therefore we held that both charges of

CSP II could not stand. *Id.* ¶ 20. In deciding which type of CSP II to let stand, because there was no separate kidnapping, we held that the legislature did not intend to permit either CSP II (in the commission of a felony) or the separate second degree felony of kidnapping whenever there is evidence of the third degree felony of CSP III. *Id.* ¶ 21. This reasoning is inapplicable in this case because of the difference in the degrees of the crimes at issue. In other words, it was the seriousness of the offenses of CSP II and kidnapping, both second degree felonies involving nine-year sentences, that motivated our belief in *Crain* as to what the legislature intended. Accordingly, we disagree with Defendant that *Crain* requires a holding that Defendant's double jeopardy rights were violated here.

## CONCLUSION

{34} We reverse Defendant's convictions of CSP III, aggravated burglary, and false imprisonment and remand them for a new trial.

{35} **IT IS SO ORDERED.**

WE CONCUR: CELIA FOY CASTILLO and RODERICK T. KENNEDY, Judges.