Certiorari Granted, June 23, 2017, No. S-1-SC-36428

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2017-NMCA-056**

**Filing Date:  April 19, 2017**

**Docket No. 34,506**

**STATE OF NEW MEXICO,**

> **Plaintiff-Appellee,**

**v.**

**KELSON LEWIS,**

> **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Judith K. Nakamura, District Judge**

Hector H. Balderas, Attorney General
Laura E. Horton, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Sergio Viscoli, Appellate Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**SUTIN, Judge.**

**{1}**      Defendant Kelson Lewis appeals from the district court's denial of his motion to bar retrial on the charge of criminal sexual contact of a minor (CSCM) in the third degree. Among other charges, the indictment charged Defendant with second degree CSCM in Count 1. After the close of the State's evidence at trial, the district court granted the State's

motion to amend the CSCM charge from second degree to third degree and granted Defendant's motion to include a jury instruction for the lesser included offense of battery. The district court declared a mistrial based on jury disagreement as to Count 1, directed a verdict of acquittal on Counts 2 and 3, and Defendant was found not guilty of Counts 4 and 5. Defendant asserts on appeal that the district court did not appropriately determine whether the jury was hung on the charge of CSCM or the lesser included battery charge. Thus, Defendant argues, double jeopardy principles prevent his retrial for CSCM, and the district court erred in denying his motion to bar retrial. Because we disagree that the record is ambiguous regarding the district court's inquiry into the jury deliberations and the charge upon which the jury was deadlocked, we affirm.

**DISCUSSION**

**{2}** Defendant asserts the district court did not properly poll the jury as to whether it was deadlocked on the charge of CSCM or the lesser included charge of battery, and therefore, Defendant received an "implied acquittal" of CSCM. Thus, Defendant argues that retrial for CSCM violates the Double Jeopardy Clauses of the State and Federal Constitutions. "We review double jeopardy claims de novo." *State v. Fielder*, 2005-NMCA-108, ¶ 10, 138 N.M. 244, 118 P.3d 752.

**{3}** The Double Jeopardy Clause "has been held to incorporate a broad and general collection of protections against several conceptually separate kinds of harm: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *State v. Montoya*, 2013-NMSC-020, ¶ 23, 306 P.3d 426 (internal quotation marks and citation omitted). "When a defendant has been acquitted at trial he may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous." *State v. Baca*, 2015-NMSC-021, ¶ 34, 352 P.3d 1151 (alteration, internal quotation marks, and citation omitted), *cert. denied sub nom. Baca v. New Mexico*, ___ U.S. ___, 136 S. Ct. 255 (2015) (mem.). Where the jury is properly instructed on a lesser included offense, an acquittal or a hung jury on the greater offense does not preclude retrial on that uncharged, lesser included offense. *See State v. Collier*, 2013-NMSC-015, ¶¶ 21-22, 301 P.3d 370.

**{4}** Defendant relies primarily on Rule 5-611(D) NMRA; *State v. Castrillo*, 1977-NMSC-059, 90 N.M. 608, 566 P.2d 1146, *overruled on other grounds by State v. Wardlow*, 1981-NMSC-029, 95 N.M. 585, 624 P.2d 527; and *State v. Garcia*, 2005-NMCA-042, 137 N.M. 315, 110 P.3d 531, to argue that he received an implied acquittal on CSCM and retrial on that charge would violate his right to be free from double jeopardy. Relying on the same authority and also on *Fielder*, 2005-NMCA-108, we conclude that Defendant's retrial for CSCM does not violate double jeopardy. We begin by discussing the relevant authority and then discuss in detail what happened at Defendant's trial and its legal effect on his double jeopardy rights.

**{5}** In *Castrillo*, the charge of first degree murder, as well as the lesser included offenses

of second degree murder and voluntary manslaughter, were submitted to the jury at the defendant's first trial. 1977-NMSC-059, ¶ 1. When the jury was unable to reach a verdict, the district court declared a mistrial without inquiring as to which of the offenses the jury had agreed and upon which the jury was deadlocked. *Id*. ¶ 14. The defendant was tried a second time and was found guilty of second degree murder. *Id*. ¶ 1. The defendant appealed, arguing his second trial violated double jeopardy. *Id*. Our Supreme Court held, though the jury was hung between acquittal and at least one of the offenses included within the murder charge, "[t]he record [was] silent upon which, if any, of the specific included offenses the jury had agreed and upon which the jury had reached an impasse." *Id*. ¶ 14. Because the record was unclear as to which of the included offenses was the basis for impasse and the district court did not conduct further inquiry to ascertain at which level of charge the jury was deadlocked, our Supreme Court reasoned that any doubt must be resolved "in favor of the liberty of the citizen." *Id*. (internal quotation marks and citation omitted). Thus, our Supreme Court determined that all but the least of the lesser included charges (i.e., voluntary manslaughter) must be dismissed and that retrial of the defendant on all but the least charge violated double jeopardy. *Id.* ¶¶ 14-15.

{6}    In *Garcia*, this Court considered whether the district court erred when it inquired whether the jury was deadlocked on the greater offense but did not inquire whether the jury was deadlocked on the lesser included offenses. 2005-NMCA-042, ¶¶ 2, 10. The jury in *Garcia* was instructed on first degree murder, as well as second degree murder and voluntary manslaughter as lesser included offenses. *Id*. ¶ 2. The district court declared a mistrial after learning the jury could not reach an agreement on the first degree murder count. *Id*. ¶ 20. Upon inquiry by the district court regarding the charge of first degree murder, the foreperson informed the court that the jury was unable to reach a unanimous verdict on that charge. *Id*. The district court did not conduct any inquiry into the jury's deliberations on the lesser included charges of second degree murder and manslaughter. *Id.* This Court determined, based on *Castrillo* and its progeny, the district court was not required to inquire into the jury's deliberations regarding lesser included offenses when the district court had already determined the jury was unable to reach an agreement as to a greater offense. *Garcia*, 2005-NMCA-042, ¶ 17. This Court noted that the holding was consistent with Rule 5-611(D), which requires:

> If the jury has been instructed on one or more lesser included offenses, and the jury cannot unanimously agree upon any of the offenses submitted, the court shall poll the jury by inquiring as to each degree of the offense upon which the jury has been instructed beginning with the highest degree and, in descending order, inquiring as to each lesser degree until the court has determined at what level of the offense the jury has disagreed. If upon a poll of the jury it is determined that the jury has unanimously voted not guilty as to any degree of an offense, a verdict of not guilty shall be entered for that degree and for each greater degree of the offense.

*See Garcia*, 2005-NMCA-042, ¶¶ 25-27. On this basis, we concluded the district court did

3

not err in the manner in which it polled the jury, and the defendant's retrial and conviction of first degree murder did not violate double jeopardy because there was a manifest necessity to declare a mistrial on that level of the charge. *Id.* ¶ 29.

**{7}** Shortly after our opinion in *Garcia*, this Court decided *Fielder* in which we considered whether the defendant's retrial for second degree criminal sexual penetration (CSP II) violated double jeopardy because there was no manifest necessity to declare a mistrial on that charge. *Fielder*, 2005-NMCA-108, ¶¶ 1, 10, 15. The jury in *Fielder* was instructed on CSP II and third degree criminal sexual penetration (CSP III), among other charges. *Id.* ¶¶ 5-6. After learning the jury was unable to reach a verdict on CSP, the district court polled the jury regarding the numerical split of the votes for guilty and not guilty but did not determine whether the jury was deadlocked on CSP II or the lesser included offense of CSP III. *Id.* ¶ 8. The defendant was retried on CSP II and the lesser included charge of CSP III and was convicted of CSP III. *Id.* ¶ 9. Again relying on *Castrillo* and its progeny, this Court determined, because the district court did not inquire into the jury's deliberations on the greater offense of CSP II to determine upon which level of CSP the jury disagreed, there was no manifest necessity to declare a mistrial as to that offense, and the defendant's double jeopardy rights were violated when he was retried for CSP II. *Fielder*, 2005-NMCA-108, ¶ 15.

**{8}** Turning to the trial in the present case, following various recesses and delays on the third day of deliberations, the jury sent a note to the district court asking, "If we cannot come to a unanimous decision for Count 1, do we move on to discuss/decide on the lesser charge for Count 1?" The district court responded with a note stating, "If you have a reasonable doubt as to guilt on Count 1 only then do you move to consideration of the included offense of battery. If you are not unanimous as to Count 1 then you do not move on to the included offense of battery." As Defendant and the State point out, it appears the transcript erroneously indicates two hours elapsed between the jury's first question and the district court's response. Approximately thirty minutes after the district court responded to the jury's first note, the jury sent a second note stating, "On the count of Criminal Sexual Contact we are unable to reach a unanimous decision of guilty or not-guilty. Should we move on to the lesser charge of battery?" The district court sent a response stating, "No. Have you reached a unanimous verdict on the other counts?" Approximately thirty-five minutes later, the jury responded on the same note below the district court's question, "Yes, we have come to [a] unanimous [decision] on [C]ounts 4 and 5." The district court sent a final note to the jury asking, "Are you finished deliberating on Count 1?" The jury sent its response while the district court was still on the record and responded on the same piece of paper below the district court's question, "Yes the Jury is finished deliberating on Count 1."

**{9}** Following a request from trial counsel for Defendant, the district court and parties discussed polling the jurors to determine which way each juror had decided Count 1, but the district court determined the jurors could not be formally polled as to whether an individual juror voted to acquit or convict. The jurors were called back into the courtroom, and the district court confirmed with the foreman that "there's no possibility for juror agreement on

4

Count 1[.]" While it does not appear trial counsel for Defendant requested the jury be polled immediately after trial as to whether the jury was deadlocked on the CSCM charge or the lesser included battery charge, Defendant nonetheless argued in his motion to bar retrial that the court did not properly poll the jury as to the level of the impasse.

**{10}**     We note the jury twice asked whether it should proceed to consider the battery charge if it was unable to reach a unanimous decision on the CSCM charge, and the district court twice explicitly instructed the jury not to consider the charge of battery unless the jury was unanimous that it had reasonable doubt about Defendant's guilt of CSCM. The court's second response indicates it understood the jury was unable to reach a unanimous decision on the CSCM charge, and it sought to determine if the jury was still deliberating on the other counts. Indeed, that understanding was consistent with the jury's express statement that it was "unable to reach a unanimous decision" on the CSCM charge. The jury's next response states it had reached a decision on the other counts, and notably, the jury did not indicate a change in its decision on Count 1 or that it had now reached a unanimous verdict on any level of charge included in Count 1. The jury's final note states it was finished with deliberations on Count 1. Also notable and pointed out by the State, the communications between the district court and the jury consistently refer to CSCM as "Count 1" and battery as the "lesser charge" or "included offense." Thus, we conclude the record of communications makes clear that the jury's inability to agree on a finding of guilty or not guilty applied only to the CSCM aspect of Count 1.

**{11}**     Defendant argues that we must presume the jury continued deliberations on Count 1 for approximately thirty-five minutes between when the court instructed the jury for the second time to not consider battery unless it was unanimous on Defendant's acquittal for CSCM and the time the jury stated it was finished as to Count 1. Defendant argues the court failed to poll the jury after the conclusion of deliberations in accordance with Rule 5-611(D), which states that the court *shall* poll the jury if the jury cannot unanimously agree upon the offenses submitted and that any ambiguity resulting from the lack of formal polling should be resolved in his favor.

**{12}**     We note that in *Castrillo* and *Fielder* the record was silent regarding the level of charge at which the jury was hung. *See Castrillo*, 1977-NMSC-059, ¶ 14 (dismissing on double jeopardy grounds all but the least of the lesser included charges when the record was unclear as to which of those offenses was the basis for the impasse and the district court did not conduct further inquiry to ascertain at which level of charge the jury was deadlocked); *Fielder*, 2005-NMCA-108, ¶ 15 (determining no manifest necessity existed to declare a mistrial on the charge of CSP II because the district court did not inquire into the jury's deliberations to determine upon which level of CSP the jury disagreed). In contrast, the record shows the jury in the present case twice indicated it was hung on the CSCM charge.

**{13}**     Defendant asserts that the level of deadlock is ambiguous because thirty-five minutes elapsed before the conclusion of deliberations, during which the jury could have acquitted Defendant of CSCM and hung on the battery charge, however, Defendant did not develop

any facts at the time the jury returned its verdicts or demonstrate there was any question regarding the level of deadlock. We note a double jeopardy challenge need not be preserved. There must, however, exist a factual basis in the record for the argument. *See State v. Wood*, 1994-NMCA-060, ¶ 19, 117 N.M. 682, 875 P.2d 1113 (acknowledging double jeopardy issues may be raised at any time "either before or after judgment," but providing that "a factual basis must appear in the record in order to support such claim"); *see also State v. Antillon*, 2000-NMSC-014, ¶ 6, 129 N.M. 114, 2 P.3d 315 (recognizing double jeopardy claims may not be waived and citing *Wood* for the proposition that a double jeopardy defense "must be supported by a factual basis in the record"); *State v. Sanchez*, 1996-NMCA-089, ¶ 11, 122 N.M. 280, 923 P.2d 1165 (stating that the appellate courts place the burden on the party raising the double jeopardy challenge to provide a sufficient record for appellate analysis of the issue).

**{14}**     Based on the jury's notes stating it was hung and therefore unable to resolve the charge of CSCM and its later confirmation that it was unable to agree on Count 1, the district court held that the jury was hung and obviously understood the level of charge upon which the jury was deadlocked. Moreover, Defendant also appears to have understood the jury to be deadlocked on the CSCM charge, because he only requested the jury be polled to determine individual votes for and against conviction and did not express any question about the level of the jury's impasse or request polling at the time to resolve any ambiguity. Beyond Defendant's argument that further deliberation may have occurred, nothing in the record suggests an interpretation other than that the jury was deadlocked on the CSCM charge. Indeed, the district court's post-deliberation questioning of the foreman and the unsigned verdict forms regarding Count 1 further cement the jury's inability to agree as to Count 1, and given the facts of the case, in particular, CSCM. Thus, based on the extent of the record before us, we decline to speculate whether the jury later acquitted Defendant of CSCM and to presume a double jeopardy violation based upon that speculation when all evidence in the record indicates the contrary.

**{15}**     Defendant contends that the district court did not strictly comply with the mandatory language of Rule 5-611(D) when it determined the level of deadlock through notes exchanged between the jury and the district court, rather than through a more formalized polling process employed at the time the jury delivered its verdicts on the other counts. Thus, Defendant asserts the district court's failure to strictly adhere to the requirements of Rule 5-611(D) bars his retrial on CSCM on double jeopardy grounds. Without opining as to what would constitute an adequate "formalized polling process" as a matter of law, we hold that in this case, where the communications evidence jury disagreement on the CSCM charge, to reverse would be to read Rule 5-611(D) more technically than substantively.

**{16}**     We hold that the notes exchanged between the jury and the district court, coupled with the verbal confirmation from the foreman that the jury was unable to agree on Count 1, demonstrate the jury was deadlocked on CSCM and satisfied the intent of Rule 5-611(D). To hold otherwise would be to exalt form over substance, which we decline to do. *See State ex rel. Children, Youth & Families Dep't v. Benjamin O.*, 2007-NMCA-070, ¶ 39, 141 N.M.

6

692, 160 P.3d 601 ("[W]e do not exalt form over substance.").

**{17}** Because the record demonstrates the jury was deadlocked on the charge of CSCM, we conclude manifest necessity existed to declare a mistrial on that charge and double jeopardy did not attach. Accordingly, we affirm.

**{18}** **IT IS SO ORDERED.**

---

**JONATHAN B. SUTIN, Judge**

**I CONCUR:**

---

**J. MILES HANISEE, Judge**

**GARCIA, Judge (dissenting).**

**{19}** I respectfully dissent in this case. This is not a post-deliberation polling case. Post-deliberation polling was never conducted by the district court in this case. *See* Majority Op. ¶ 9. Although our decisions in *Garcia* and *Fielder* give some guidance to resolve the correct way to poll a jury, both involved *post-deliberation polling* of the jury, and whether, pursuant to Rule 5-611(D), the jury was correctly polled after deliberations were completed. *See Garcia*, 2005-NMCA-042, ¶¶ 27-29; *Fielder*, 2005-NMCA-108, ¶¶ 8-11. In the present case, the district court made a reasonable and clear inquiry regarding a potential deadlock on Count 1 *during jury deliberations but failed to poll the jury after jury deliberations* were concluded, as required under Rule 5-611(D). Majority Op. ¶¶ 8-9. It is this failure to ever poll the jury after deliberations ceased, some thirty-five minutes after the inquiry during jury deliberations, that aligns this case more closely with the circumstances in *Castrillo*. *See Castrillo*, 1977-NMSC-059, ¶ 14 (establishing that post-deliberation polling was not done regarding the included offenses related to the murder charge). Because no polling was ever done in this case, as the majority agrees is a *requirement* under Rule 5-611(D), it is not this Court's role to change or modify the unambiguous requirement in Rule 5-611(D) regarding polling the jury. *See* Majority Op. ¶¶ 11, 15; *see also State v. Montoya*, 2011-NMCA-009, ¶ 8, 149 N.M. 242, 247 P.3d 1127 (recognizing that interpretation of a Supreme Court rule is a question of law and the plain meaning rule applies where the language of the rule is "clear and unambiguous" (internal quotation marks and citation omitted)).

**{20}** The issue that concerns me is whether our Supreme Court simultaneously intended to create a rule requiring the polling of the jury while also providing for case-by-case exceptions to polling—where this Court then attempts to interpret questions and answers exchanged between the district court and the jury during deliberations. The majority is correct when it concludes that one reasonable interpretation of the jury deadlock issue would support its interpretation. *See* Majority Op. ¶¶ 14, 16. The issue, however, is not about a

7

potentially reasonable interpretation that this Court can make regarding inquiries and questions occurring during jury deliberations, it is about whether our Supreme Court wants us to make these interpretations on a case-by-case basis.

**{21}** Although the district court may have made a reasonable and adequate inquiry regarding the basis for the jury's alleged deadlock on Count 1, that inquiry was made during the time that deliberations were still ongoing and it failed to fulfill the polling requirements of Rule 5-611(D) after jury deliberations were completed. The only question resolved after the jury completed its deliberations established that "there [was] no possibility for juror agreement on Count 1." A specific inquiry regarding the primary offense of CSCM and the lesser included offense of battery was not addressed after deliberations ceased. Any confusion or ambiguity regarding possible changes in the jury's position that may have occurred during the final thirty-five minutes of deliberation on Count 1 was not resolved by the required post-deliberation polling of the jury.

**{22}** If our Supreme Court mandated that the district court is required to remove any potential for confusion or ambiguity regarding which offenses a jury has deadlocked over, then post-deliberation polling under Rule 5-611(D) is not optional. If there is room for this Court to resolve confusion or ambiguity regarding which offenses a jury has deadlocked over, without post-deliberation polling, then the majority has adequately identified one potential exception to Rule 5-611(D). I believe that any exception to the polling requirement under Rule 5-611(D) must be left to our Supreme Court and should not be made by this Court. *See Alexander v. Delgado*, 1973-NMSC-030, ¶ 9, 84 N.M. 717, 507 P.2d 778 ("The general rule is that a court lower in rank than the court which made the decision invoked as a precedent cannot deviate therefrom and decide contrary to that precedent, irrespective of whether it considers the rule laid down therein as correct or incorrect." (internal quotation marks and citation omitted)). "This [C]ourt is bound by [S]upreme [C]ourt rules." *Shain v. Birnbaum*, 1991-NMCA-092, ¶ 5, 112 N.M. 700, 818 P.2d 1224; *see State ex rel. Martinez v. City of Las Vegas*, 2004-NMSC-009, ¶¶ 20-22, 135 N.M. 375, 89 P.3d 47 (confirming that the Court of Appeals remains bound by Supreme Court precedent but is invited to explain any reservations that it may harbor, with one exception allowing for a review of uniform jury instructions that have not previously been ruled upon by the Supreme Court).

**{23}** As a result, I do not agree with the majority's deviation from our Supreme Court's rule. Polling under Rule 5-611(D) is a requirement after all jury deliberations have ceased and are completed. Any modification in the "shall poll the jury" requirement set forth in Rule 5-611(D) must be left to the discretion of our Supreme Court and is not a discretionary matter that this Court should undertake on the basis of inference, technicality, or substance over form.

---

**TIMOTHY L. GARCIA, Judge**

8

**TIMOTHY L. GARCIA, Judge (dissenting).**